579 So.2d 766 (1991)
The STATE of Florida, Appellant,
v.
Emiliano MEJIA, Appellee.
No. 90-2050.
District Court of Appeal of Florida, Third District.
April 30, 1991.
Robert A. Butterworth, Atty. Gen., and Julie S. Thornton, Asst. Atty. Gen., for appellant.
Bennett H. Brummer, Public Defender, and Howard K. Blumberg, Asst. Public Defender, for appellee.
Before FERGUSON, LEVY and GODERICH, JJ.
FERGUSON, Judge.
Police and rescue units arrived on the scene of a gruesome throat-slashing murder and attempted suicide involving former lovers. Mejia, the perpetrator and survivor of the incident, was arrested and taken to Jackson Memorial Hospital where he underwent surgery. The defendant's clothing and other personal effects were taken to the police station where they were catalogued on an inventory sheet and placed in storage. Included in the personal effects taken from the defendant  incident to his arrest  were personal papers found in his wallet which the police saw but did not read.
In an interview with the murder victim's mother, investigators learned that Mejia had a newspaper article, in Spanish, of a similar incident of murder and attempted suicide by throat-slashing. The newspaper article, purportedly, was one of the papers contained in Mejia's wallet. With that information, police investigators returned to the property room, two weeks after the homicide, to re-examine the personal papers *767 previously seen in Mejia's wallet. There they found the newspaper article.[1]
The question presented is whether a warrant should have been secured prior to the delayed police examination of the newspaper article which had been in continued police custody following a lawful search incident to arrest. At the hearing on Mejia's motion to suppress the newspaper clipping, the trial court agreed that the State's failure to obtain a search warrant in order to have a second look at the defendant's personal papers rendered the search illegal. We disagree.
It is well established that a lawfully arrested person may be subjected to a complete search of his person and effects without the need for a search warrant. United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). Once the defendant is in custody, the items that were on his person at the time of his arrest may lawfully be searched and seized without a warrant "even though a substantial period of time has elapsed between the arrest and subsequent administrative processing, on the one hand, and the taking of the property for use as evidence, on the other. This is true where the clothing or effects are immediately seized upon arrival at the jail, held under the defendant's name in the property room of the jail and at a later time searched and taken for use at the subsequent criminal trial." United States v. Edwards, 415 U.S. 800, 807, 94 S.Ct. 1234, 1239, 39 L.Ed.2d 771, 777 (1974). Faced with the same question presented here, the Supreme Court of Kansas recently held that the contents of the defendant's pockets, including a wallet and papers lawfully taken from him before he was jailed, were subject to a "second look" by police officers at a later time without a warrant. State v. William, 248 Kan. 389, 807 P.2d 1292 (1991).
The sound rationale of the rule is that there is no legitimate expectation of privacy in the contents of items that have previously been viewed under lawful authority. United States v. Burnette, 698 F.2d 1038, 1039 (9th Cir.), cert. denied, 461 U.S. 936, 103 S.Ct. 2106, 77 L.Ed.2d 312 (1983). Thus, when an item has been lawfully seized and remains in the uninterrupted possession of the police, any privacy interest that previously existed is dissipated, and subsequent searches may be conducted without a warrant. Lightbourne v. State, 438 So.2d 380 (Fla. 1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984). It was held in United States v. Phillips, 607 F.2d 808, 809 (8th Cir.1979), accordingly, that slips of paper found in a defendant's wallet after a delayed search following a lawful arrest were admissible into evidence as an exception to the warrant requirement of the fourth amendment. Courts have consistently recognized that the second look imposes no greater intrusion than the initial search. E.g., Lockhart v. McCotter, 782 F.2d 1275 (5th Cir.1986), cert. denied, 479 U.S. 1030, 107 S.Ct. 873, 93 L.Ed.2d 827 (1987); United States v. Lester, 647 F.2d 869 (8th Cir.1981); United States v. Oaxaca, 569 F.2d 518 (9th Cir.), cert. denied, 439 U.S. 926, 99 S.Ct. 310, 58 L.Ed.2d 319 (1978).[2]
*768 In this case the police did no more at the later search than they were legally entitled to do at the time of the arrest.[3] That the full evidentiary value of the paper in question was not revealed until a reasonable time had passed to permit a post-arrest investigation, did not render the second look unlawful. See generally 2 W. LaFave Search and Seizure § 5.3(b) at 491 (1987) (Edwards authorizes warrantless retrieval of items held in defendant's name in property room where "(i) an object lawfully came into plain view at the time of a search upon the arrestee's arrival at the place of detention, (ii) later investigation establishes that the item is of evidentiary value, and (iii) the item remains in police custody... .").
The order granting the motion to suppress is reversed.
NOTES
[1] Although the briefs do not discuss the materiality of the newspaper article, we assume the item would be evidence of premeditation as an element of first-degree murder.
[2] United States v. Khoury, 901 F.2d 948 (11th Cir.1990), relied upon by the trial court, is distinguishable. After the defendant in Khoury had been arrested for various conspiracies related to drug trafficking, his car was impounded. A DEA agent removed a closed briefcase from the locked trunk and took it to his office where he inspected its contents, including a spiral notebook. He determined that nothing in the notebook had any evidentiary value. The court held that the purpose to be served by an inventory search, i.e., to document valuable items, had been fulfilled in the initial examination of the briefcase contents and that a subsequent search required a warrant.

Courts have analyzed the facts differently where the personal items, later wanted as evidence, were obtained pursuant to the general authority to search a person incident to an arrest. In Khoury the examination of the contents of a briefcase taken from a locked automobile trunk was an inventory search authorized by strict administrative rules. Our analysis in this case does not follow the inventory search line of cases. Instead, we reason that the article seized from the defendant's person incident to an on-the-crime-scene arrest was the fruit of a valid search, subject to a later examination even if its evidentiary value was not known at the time of the arrest.
[3] Cases holding that police officers are entitled to read contents of papers found during the booking process include Commonwealth v. Nace, 524 Pa. 323, 571 A.2d 1389 (1990), cert. denied, ___ U.S. ___, 111 S.Ct. 426, 112 L.Ed.2d 411 (1990); Roose v. State, 759 P.2d 478 (Wyo. 1988); People v. Hamilton, 46 Cal.3d 123, 249 Cal. Rptr. 320, 756 P.2d 1348 (1988).