PER CURIAM.
Defendant, a juvenile, appeals from an Order denying his Motion to Suppress a firearm which was seized during an encounter with police officers. Because we find that the initial encounter was valid and that the arresting officer articulated a reasonable suspicion that defendant was armed, we affirm.
The juvenile was charged with possession of a firearm after police seized the weapon pursuant to a valid pat-down of defendant. Two officers working a burglary stakeout detail approached the juvenile and two others (collectively “the juveniles”) after receiving a radio transmission identifying three individuals walking about the neighborhood looking into cars, homes, and yards. Upon stopping the juveniles, one of the officers noticed that defendant’s shirt “didn’t follow the contour of his body.” The officer testified that he thought there was something in defendant’s waistband and searched defendant for officer safety. The officer recovered a firearm from defendant’s waistband.
Defendant filed a Motion to Suppress the firearm claiming that the officers did not have a reasonable suspicion that defendant had committed, or was about to commit a criminal act, and that the officers did not have a reasonable belief that defendant was armed and/or posed a threat to the officers’ safety. After a hearing, the trial court denied defendant’s motion. Thereafter, defendant plead no contest to the charge and specifically reserved the right to appeal denial of the Motion to Suppress.
*1224 We find that the officers’ conduct, under the circumstances, was reasonable. State v. Webb, 398 So.2d 820, 822 (Fla.1981) (citing Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). The officers, who were on burglary stakeout detail in a one and one half square mile area, received a radio transmission that three individuals were seen peering into cars, homes and yards in the detail area. The juveniles were standing on a swale in the shadows beneath some trees when the officers encountered them within the detail area. At this point, the officers had two choices. They could ignore the situation and drive away in a clear dereliction of their duty as law enforcement officers, or, upon seeing the juveniles, and knowing that the individuals had been observed by other officers, the officers could make contact and fulfill their obligations as sworn police officers.
Fortunately, the officers chose the latter and in the course of their contact, one of the officers noticed, as he described, that the defendant’s shirt “didn’t follow the contour of his body.” Although the officer did not use the frequently utilized magic word, “bulge,” the officer clearly articulated the specific matter that caused him to become concerned for his, and his partner’s, safety. See § 901.151(5), Fla. Stat. (1997); Terry, 392 U.S. at 21-27, 88 S.Ct. 1868; Webb, 398 So.2d at 821; Richardson v. State, 599 So.2d 703, 705 (Fla. 1st DCA 1992); State v. Callaway, 582 So.2d 745, 746 (Fla. 2d DCA 1991); Johnson v. State, 537 So.2d 117, 119-20 (Fla. 1st DCA 1988). At that point, the officer conducted a pat-down, or frisk, of defendant at the point where defendant’s shirt did not meet the contour of his body. In doing so, the officer discovered a firearm tucked in the juvenile’s waistband.
At the outset, we note that decisions of a trial court on a motion to suppress evidence come for appellate review clothed with a presumption of correctness Murray v. State, 692 So.2d 157, 159 (Fla.1997) (citing McNamara v. State, 357 So.2d 410, 412 (Fla.1978)) and, on review, the appellate court must interpret the evidence and reasonable inferences in a manner consistent with such a ruling. Murray, 692 So.2d at 159.
Each individual action of the officer, starting with receiving the initial radio transmission and continuing through the discovery of the concealed firearm in the juvenile’s waistband, followed a logical sequence demonstrating that the officer’s actions, at each step of the way, were not only reasonable, but were those actions that society would expect of a professional law enforcement officer who found her or himself in the situation this officer found himself. The officers, who received a radio transmission that three individuals had been spotted looking into homes, yards, and cars in the detail area, were justified in stopping defendant. Under the “fellow officer” rule, the knowledge, and probable cause or reasonable suspicion, of the directing officer is imputed to the arresting officer. See State v. White, 660 So.2d 664, 667 (Fla.1995); Smith, 719 So.2d at 1021-22; Carroll, 497 So.2d at 259. In the instant case, the arresting officers monitored a radio transmission from fellow detail units that three individuals were walking around the neighborhood looking into cars, homes, and yards. Several detail units followed the individuals, but eventually lost sight of them. Pursuant to the radio transmissions, the arresting officers drove into the area and, upon spotting the juveniles hanging around, approached them. Since the officers acted reasonably under the circumstances, their actions were reasonable. See Terry, 392 U.S. at 21-23, 88 S.Ct. 1868; Webb, 398 So.2d at 820. Accordingly, their actions cannot be said to violate the Fourth Amendment’s proscription against unreasonable searches and seizures.
Although unnecessary for a determination of the case, we point out that the officers, upon observing juveniles “hanging out” well after midnight, and in *1225 violation of the Juvenile Curfew Ordinance, clearly had the authority to take the juvenile into custody and transport him to the police station pursuant to the provisions of that ordinance. See § 877.22(4), Fla. Stat. (1997). Naturally, an officer always has the authority to search anyone before she or he puts them in the back of the police cruiser for transportation. To do any less would mean that the officer might find her or himself transporting someone with an undetected deadly weapon thereby posing a potential danger to the safety of the officers and the community. Such a position is untenable. “Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties.” Terry, 392 U.S. at 23, 88 S.Ct. 1868. Therefore, if the officers transported the juvenile to the police station for violation of curfew pursuant to section 877.22(4), Florida Statutes, the officers would have been justified to search the juvenile and would undoubtedly discover the firearm. Florida has adopted the inevitable discovery doctrine which provides that “evidence obtained as the result of unconstitutional police procedure may still be admissible provided the evidence would ultimately have been discovered by legal means.” Maulden v. State, 617 So.2d 298 (Fla.1993); see also State v. Ruiz, 502 So.2d 87 (Fla. 4th DCA 1987). Accordingly, we find that the officers’ search of defendant was independently reasonable and, would have been discovered anyway.
Affirmed.
LEVY and FLETCHER, JJ., concur.