SHEPHERD, J.
Both the Fourth Amendment to the United States Constitution and its Florida counterpart, Article I, section 12, of the Florida Constitution, guarantee “[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.” U.S. Const, amend. IV. The issue in this appeal is whether it is “unreasonable,” within the meaning of these two constitutional provisions, for a police officer to perform a weapons search without having performed a pat-down on a fifteen-year-old truant before putting her in the back of his police car to execute his statutory obligation to *1217 transport her to school, when the officer has no basis to suspect her of possessing any weapons. Although one could be forgiven for concluding that a search on these facts is textually defensible, the interpretive law, as it has developed in modern times, requires a contrary conclusion. A brief summary of the facts of the case is integral to explain why this is so.
On October 17, 2007, at approximately 1:30 p.m., two Miami-Dade police officers came into contact with L.C. at a government housing project behind Southridge High School in Miami-Dade County. The officers believed she was truant, so they stopped her. She appeared to be sixteen or seventeen-years old and wore a polo shirt bearing the Southridge school emblem. After confirming she should be in school, they told her they were going to transport her back there. Before placing her in the police car, one of the officers, Officer Quintas, “searched all of her pockets.” Her rear pocket contained a small bag of marijuana.
Significantly, Officer Quintas, who conducted the tactile search, testified he saw no bulges to indicate the presence of a weapon. The authority for the search came from standard police procedure. Officer Quintas testified as follows:
Defense Counsel: And did you have any reason to believe that she ... had any weapons on her?
Officer Quintas: We search everybody because we’re putting them in our police vehicle.
[[Image here]]
Defense Counsel: And what exactly ... was your search? You went — directly into her pockets, correct[?]
Officer Quintas: I searched all of her pockets....
Defense Counsel: But knowing that, [did] you have ... any reasons to believe ... that she had a weapon?
Officer Quintas: She’s a truant, at which time she was going to be transported back to the school. And we searched her in order for her safety and our safety.
Defense Counsel: But did you believe that she had a weapon — or did you have any reason to believe that she had a weapon?
Officer Quintas: I believe anybody has a weapon.
Defense Counsel: [D]id you observe anything specific that ... you could point to[?]
Officer Quintas: No. There w[ere] no bulges.
Defense Counsel: So you went straight into her pockets, correct?
[[Image here]]
Officer Quintas: I searched all her pockets.
Defense Counsel: You searched all her pockets. So you didn’t pat her down beforehand?
Officer Quintas: No.
L.C. moved to suppress the marijuana based upon the unlawfulness of the search, arguing the police had no probable cause or other particularized suspicion to suspect the presence of a weapon. The trial court denied the motion, after which L.C. pled nolo contendere, reserving her right to appeal.

ANALYSIS

Initially, we note a trial court’s decision on a motion to suppress evidence comes to us with the presumption of correctness. On appellate review, “we must interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining *1218 the trial court’s ruling.” Murray v. State, 692 So.2d 157, 159 (Fla.1997).
Pursuant to section 984.1S(l)(b), Florida Statutes (2007), an officer may take a child into custody “when the officer has reasonable grounds to believe that the child is absent from school without authorization ... for the purpose of delivering the child, without unreasonable delay to the appropriate school system site.” Truancy is not a crime. See C.G. v. State, 689 So.2d 1246, 1247 (Fla. 4th DCA 1997); see also Kazanjian v. Sch. Bd. of Palm Beach County, 967 So.2d 259, 263 (Fla. 4th DCA 2007) (stating the primary purpose of Florida’s truancy laws is to promote academic success); J.M.J. v. State, 389 So.2d 1208, 1210 (Fla. 1st DCA 1980) (“It is apparent that the legislature, in deliberate wisdom, chose to classify ... habitual truants only as dependent children, providing the court with a flexible range of placement options to meet the child’s need for supervision.”); In re Julio R., 129 Misc.2d 171, 492 N.Y.S.2d 912, 914 (N.Y.Fam.Ct.1985) (discussing New York City Education Law section 3205(3), which states, in part, an attendance officer “may arrest without warrant any minor who is unlawfully absent from attendance upon instruction,” and explaining the “arrest ... is, in fact, a noncriminal detention, rather than arrest in the classic, criminal law sense,” and the law is “a child protective statute, intended to insure to every child the schooling he needs to function in the adult world”); 78A C.J.S. Schools and Districts § 1028 (2009) (“An ‘arrest’ by an officer under a truancy statute is a severely limited type of arrest, the sole purpose of which is to quickly place the minor in a school setting, and the arresting officer may not use the truancy arrest as a pretext for investigating criminal matters.”); Jason Scronic, Comment, Take Your Seats: A Student’s Ability to Protest Immigration Reform at Odds until State Truancy and Compulsory Education Laws, 2 Fla. A & M U.L.Rev. 185, 188 (2007).[1] Because L.C. was not arrested in this case, the search incident to arrest exception to the warrant requirement cannot apply. Cf. State v. Mejia, 579 So.2d 766, 766 (Fla. 3d DCA 1991) (finding a search of a person incident to arrest is a recognized exception to the search warrant requirement). Ordinarily, a warrantless search incident to arrest is permissible because of the need to disarm a suspect to take him into custody and to preserve evidence for trial. See, e.g., United States v. Robinson, 414 U.S. 218, 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); State v. Parker, 399 So.2d 24, 29 (Fla. 3d DCA 1981). However, when there has not been a custodial arrest, the danger to the officer is considered to be significantly lessened due, in part, to the brief encounter between the officer and suspect. Knowles v. Iowa, 525 U.S. 113, 117, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998) (declining to extend Robinson, 414 U.S. at 218, 94 S.Ct. 467, to situations where concern for officer safety does not rise to same level as in Robinson and where need to preserve evidence is not at all present) (quoting Cupp v. Murphy, 412 U.W. 219, 296 (1973) (“Where there is no formal arrest ... a person might well be *1219 less hostile to the police and less likely to take conspicuous, immediate steps to destroy incriminating evidence.”)).
The uniqueness of this case lies in the fact Officer Quintas did not pat-down L.C. prior to directly searching her pockets. Although we appreciate the concern of officer safety, we are aware of no case that stands for the proposition officers can search an individual without having performed a pat-down simply because the individual is being placed in a police vehicle. See Knowles, 525 U.S. at 117, 119 S.Ct. 484 (acknowledging the concern for officer safety and justification for additional “minimal” intrusion of ordering driver and passengers out of the car where officer stopped motorist for speeding and issued him a citation rather than arrested him, but stating greater intrusion of full field-type search is not justified), but see A.J.M. v. State, 746 So.2d 1222, 1225 (Fla. 3d DCA 1999) (stating, in case where weapon was seized pursuant to a “valid pat-down,” in dicta, “[njaturally, an officer always has the authority to search anyone before she or he puts them in the back of the police cruiser for transportation”) (emphasis added). To the contrary, case law consistently indicates the officer must have a reasonable belief his safety is in danger and must first perform a pat-down. See Ybarra v. Illinois, 444 U.S. 85, 93, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979) (“[A] law enforcement officer, for his own protection and safety, may conduct a patdown to find weapons that he reasonably believes or suspects are then in the possession of the person he has accosted.”); United States v. McCargo, 464 F.3d 192, 202 (2d Cir.2006) (“[I]n cases where the police may lawfully transport a suspect to the scene of the crime in the rear of a police car, the police may carry out a departmental policy, imposed for reasons of officer safety, by patting down that person.”); United States v. Burton, 228 F.3d 524, 528 (4th Cir.2000); E.P. v. State, 997 So.2d 1240, 1240 (Fla. 3d DCA 2008) (stating necessity of close proximity in police vehicle itself provides needed basis for pat-down of person); A.J.M. v. State, 746 So.2d at 1224 (affirming trial court order denying motion to suppress where officer performed pat-down of juvenile and “clearly articulated the specific matter that caused him to become concerned for his, and his partner’s safety”); C.G. v. State, 689 So.2d at 1248 (stating officer patted down juveniles prior to placing them in his vehicle and explaining that in Terry[2] search, officer cannot go beyond pat-down of suspect’s outer clothing “unless that pat down or other circumstances leads the officer to conclude that the suspect had a weapon on his person”); Harvey v. State, 703 So.2d 1113 (Fla. 1st DCA 1997) (holding that search exceeded bounds of Florida and federal law where arresting officer pulled back waistband of Harvey’s trousers to see if Harvey put anything down the seat of his pants instead of doing a weapons pat-down); State v. Evans, 67 Ohio St.3d 405, 618 N.E.2d 162, 167 (1993) (recognizing that officers were justified in patting down a driver based on legitimate concern for self-protection). But see Robinson, 414 U.S. at 235-36, 94 S.Ct. 467 (stating it is “scarcely open to doubt” the danger to an officer is greater in the case of extended exposure resulting from taking a suspect into custody and transporting him to the police station than in the case of fleeting contact resulting from a Terry stop, which provides an adequate basis for treating all custodial arrests alike for purposes of search justification).
In Terry, 392 U.S. at 21, 88 S.Ct. 1868, the Supreme Court stated, “in justifying the particular intrusion the police officer *1220 must be able to point to specific and artic-ulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.” The Court went on to say that in making the assessment of the reasonableness of a particular search in light of the particular circumstances,
the facts must be judged against an objective standard: would the facts available to the officer at the moment of the ... search ‘warrant a man of reasonable caution in the belief that the action taken was appropriate? Anything less would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches....
Id. at 21-22, 88 S.Ct. 1868 (emphasis added) (internal citations omitted). On direct examination, Officer Quintas stated he searches anyone he transports in his vehicle “for weapons, to make sure they don’t have anything that can harm us or harm themselves.” When asked by defense counsel if Officer Quintas believed L.C. had a weapon, he answered, “I believe anybody has a weapon.” He testified he did not observe anything specific he could point to, that there were no bulges on L.C., and that he performed “a direct search of all her pockets.” He at no time patted L.C. down. See Richardson v. State, 599 So.2d 703, 705 (Fla. 1st DCA 1992) (explaining an officer must have additional articulable suspicion person stopped might be armed with dangerous weapon to conduct a pat-down and providing examples of conduct which might constitute articulable facts to support reasonable suspicion suspect is armed and dangerous, including the suspect’s failure to cooperate or furtive movements, or a bulge in the suspect’s clothing); cf. Daniels v. State, 543 So.2d 363, 366 (Fla. 1st DCA 1989) (a “bare” or “gut” feeling that a suspect is engaged in criminal activity is an insufficient basis for a stop and frisk).
In the absence of reasonable suspicion, Officer Quintas was not justified in proceeding to a direct search of L.C. merely because he felt uneasy about his safety, nor could he do so based upon blanket department policy. At minimum, he was required to perform a pat-down.[3] We, therefore, reverse the order denying the motion to suppress.
Reversed and remanded.

. This article explains the history of truancy and compulsory education laws, and notes that generally, "the purpose of compulsory education laws is to ensure that children attend school,” and that truancy offense generally is not treated as criminal because emphasis is on correcting the behavior rather than punishing the child. Id. Scronic further explains the reasons states have adopted truancy and compulsory education laws, specifically 1) because of social concerns about child labor and employment opportunities; 2) the importance of training children in "good citizenship, patriotism, and loyalty to the state and the nation”; and 3) a desire to reduce vagrancy, juvenile crime and daytime crime. Id. at 189.

. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

. We save for another day the not inconsequential question whether Officer Quintas would have had the authority to perform a pat-down of L.C. Compare E.P., 997 So.2d at 1240 (citing Jackson v. State, 791 P.2d 1023, 1028 (Alaska Ct.App.1990 ("[I]n the case of transportation in a police vehicle ... the necessity of close proximity will itself provide the needed basis for a protective pat-down of the person.")) and People v. Tobin, 219 Cal.App.3d 634, 641, 269 Cal.Rptr. 81 (Cal.Ct.App.1990) (recognizing the "need to transport a person in a police vehicle in itself is an exigency which justifies a pat-search for weapons”) with Enich v. State, 838 So.2d 1216, 1218 (Fla. 3d DCA 2003) (explaining that a pat-down for weapons is justified, specifically when an officer, "in light of his experience, has a reasonable suspicion that the detainee is armed and dangerous”) and Winters v. State, 578 So.2d 5, 6 (Fla. 2d DCA 1991) (finding Florida Stop and Frisk Law authorizes limited search to disclose dangerous weapon where officer has reasonable suspicion detainee is armed; "nevertheless, the search may not ordinarily go beyond a pat-down of the outer clothing”).