Dear Mr. Gibson:
As legal advisor for the St. Petersburg Police Department, you have asked for my opinion on substantially the following question:
Is it lawful for a law enforcement officer to conduct a pat-down for weapons for officer safety purposes, without reasonable suspicion said person is armed, prior to transporting a child who is not arrested, but is otherwise lawfully detained and involuntarily being transported pursuant to section 984.13, Florida Statutes?[1]
In sum:
Based on the increased threat to officer safety involved in transporting offenders in a patrol vehicle, a law enforcement officer who has taken a minor into custody pursuant to section 984.13, Florida Statutes, and is transporting that minor may perform a limited frisk or pat-down for weapons before placing the minor in a law enforcement vehicle in order to ensure that the minor possesses no weapons or other dangerous instrumentalities.
According to your letter, there are occasions when it is incumbent upon an officer to transport an individual, usually a juvenile, in the officer's vehicle, for reasons unrelated to a crime or a criminal investigation. Your examples include individuals "going involuntarily" such as truants or runaways. You ask whether a law enforcement officer, who must transport a truant or run-away minor pursuant to Florida law, is authorized to conduct a pat-down for weapons for officer safety reasons before placing the minor in the patrol car.
The Fourth Amendment to the United States Constitution, made applicable to the states through the due process clause of theFourteenth Amendment, [2] guarantees to all persons the right to be secure from unreasonable searches and seizures. Further, the Florida Constitution provides protection from unreasonable searches and seizures in Article I, section 12, which parallels those protections in the federal constitution:
"The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, and against the unreasonable interception of private communications by any means, shall not be violated. No warrant shall be issued except upon probable cause, supported by affidavit, particularly describing the place or places to be searched, the person or persons, thing or things to be seized, the communication to be intercepted, and the nature of evidence to be obtained. This right shall be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court. Articles or information obtained in violation of this right shall not be admissible in evidence if such articles or information would be inadmissible under decisions of the United States Supreme Court construing the4th Amendment to the United States Constitution."[3]
The basis for the proscriptions in the Fourth Amendment and, by extension, in Article I, section 12 of the Florida Constitution, is to impose a reasonableness standard upon the exercise of discretion by government officials, including law enforcement officers, "to safeguard the privacy and security of individuals against arbitrary invasions[.]"[4] Thus, the courts, in judging the permissibility of a particular law enforcement practice, will balance its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests.[5]
Florida's statute on truancy, which provides generally for children in need of services, is section 984.13, Florida Statutes. Under the statute, a law enforcement officer is directed to take into custody and transport a child believed to be truant or who has run away or voluntarily requests certain services. As provided in this statute, a child may be taken into custody:
"(a) By a law enforcement officer when the officer has reasonable grounds to believe that the child has run away from his or her parents, guardian, or other legal custodian.
(b) By a law enforcement officer when the officer has reasonable grounds to believe that the child is absent from school without authorization or is suspended or expelled and is not in the presence of his or her parent or legal guardian, for the purpose of delivering the child without unreasonable delay to the appropriate school system site. . . .
* * *
(d) By a law enforcement officer when the child voluntarily agrees to or requests services pursuant to this chapter or placement in a shelter."
An officer taking a child into custody pursuant to this provision is charged by statute with transporting the minor and releasing the child to a parent, guardian, legal custodian, or responsible adult relative or to a services provider if there are reasonable grounds to believe the child has run away, is truant, or is beyond the control of his or her parents, guardian, or legal custodian.[6]
While truancy is not a crime in this state and Florida courts have recognized that "[c]ircumstances that allow a juvenile to be taken into custody under section 984.13 are not crimes[,]"[7] the statute does empower a law enforcement officer to take a truant into custody.
You have asked whether an officer, transporting a child pursuant to section 984.13, Florida Statutes, is authorized to pat-down that minor prior to placing him or her in the officer's patrol car in the absence of any suspicion that the child is armed. The appellate courts of this state have addressed the authority of law enforcement officers to pat-down a juvenile offender suspected of committing a crime prior to transporting him or her in a patrol car.[8] However, I am aware of only one recent appellate decision in this state analyzing the validity of the search or pat-down of a truant and that case did not directly address the validity of the pat-down under these circumstances, but speaks to a search done under these circumstances in the absence of apat-down.
In L.C. v. State, [9] police officers stopped L.C. believing she was truant, confirmed that fact, and determined to transport her back to school. Before placing her in the police car, the officers searched her pockets and discovered drugs. At trial, the officer who conducted the search testified that he saw nothing to indicate the presence of a weapon, but that the search of L.C. prior to placing her in the police car was standard police procedure.
The court reviewed the terms of section 984.13(1)(b), Florida Statutes, noting that truancy is not a criminal offense. Because there was no possibility of arrest in this case, the court rejected the "search incident to arrest" exception to the requirement of a warrant for a search and determined that the search was not valid.[10] The court stated that "we are aware of no case that stands for the proposition officers can search an individual without having performed a pat-down simply because the individual is being placed in a police vehicle."[11] The court recognized that "case law consistently indicates the officer must have a reasonable belief his safety is in danger and must first perform a pat-down."[12] (emphasis in original)
In rejecting the validity of the full search of L.C., the court "save[d] for another day the not inconsequential question whether [the officer] would have had the authority to perform a pat-down of L.C."[13] Although the L.C. court did not directly address the issue central to your inquiry, the court referenced UnitedStates v. McCargo, [14] a 2006 federal second circuit court case, cited with approval by the court in L.C., that may provide direction.
In McCargo, the defendant had been stopped by police officers who intended to return him to the scene of a crime for identification purposes. Because the officers planned to transport him in the back of their patrol car, they frisked McCargo for weapons pursuant to a departmental policy requiring officers "to pat down all persons before placing them in the back of a police car to protect the officers' safety."[15] At trial, McCargo moved to suppress the handgun discovered during the pat-down arguing that the frisk of his person, without a reasonable suspicion that he was armed, violated his Fourth Amendment rights.
As the federal court in McCargo noted, Terry v.Ohio[16] specifically authorized a pat-down where, following a stop, the officers believed that the person detained was armed.[17] However, the pat-down in McCargo was performed pursuant to a policy of the police department that required pat-downs before transporting any person in a police car to ensure officer safety. Thus, "the question we must answer is whether a suspect may be frisked in certain circumstances as part of aTerry stop without officers' relying on a reasonable suspicion that he is armed."[18]
Based upon the rationale of the Terry decision, the court held that the pat-down of McCargo did not violate hisFourth Amendment rights. The court reiterated that Terry held that police may frisk a person if they have a reasonable belief that the person is armed and dangerous. As the Second Circuit continued in its analysis of Terry:
"Paramount in the Court's reasoning was that theFourth Amendment should not require the police to investigate crime with their safety unduly at risk. `Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties. . . . We cannot blind ourselves to the need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they may lack probable cause for an arrest.' (citation omitted) Weighing this important interest in police and public safety against the `brief, though far from inconsiderable,' intrusion on an individual's privacy (citation omitted), the Court concluded that a frisk for weapons was permissible."[19]
The court noted that "[an] [sic] interest in officer safety has been the justification for Terry stops from their inception"[20] and that transporting a suspect in the back of a police car as part of a Terry stop was markedly different from a typical Terry stop involving the detention of a suspect on the street:
"The officers are less able to protect themselves from the possibility of violence. The officers cannot depart or remove themselves temporarily from the situation and call in additional officers as backup. The suspect and the officers are in close proximity to each other for the duration of the transportation; the suspect sits behind them, a few feet away in the rear of the car, frequently separated by only a wire grate. And the suspect is not subject to the officers' immediate physical control or restraint: if the suspect turns out to be armed, the police are at his mercy."[21]
The court concluded that the dangers posed to police officers in situations where a suspect, who may be armed, is placed in the rear of a police car are substantially different and greater than those posed in the typical Terry stop. "The increased threat to police safety informs the balance to be struck between the safety interests of the police and the privacy interests of individuals."[22] The court held that permitting a limited frisk for weapons prior to placing a suspect in a police car, pursuant to an established policy, represented an appropriate balancing of the interests at stake. However, the McCargo court emphasized the limited nature of its ruling:
"Our holding in this case is a narrow one. We are not holding that the police are entitled to pat down a person, absent reasonable suspicion that he is armed, simply because they have stopped that person pursuant to a lawful Terry stop. However, in cases where the police may lawfully transport a suspect to the scene of the crime in the rear of a police car, the police may carry out a departmental policy, imposed for reasons of officer safety, by patting down that person. Because the police must have alegitimate law-enforcement reason to transport a suspect, we see little danger that policies such as these might be used as a pretext for a suspicionless frisk."[23] (e.s.)
Thus, based largely on the language in Terry concerning officer safety, the McCargo court approved the limited frisk of the suspect prior to placing him in the back of the police car pursuant to a departmental policy.
The reasoning of McCargo and its application of theFourth Amendment principles is highly instructive in answering your inquiry. Though truancy and the other custodial offenses identified in section 984.13, Florida Statutes, are not crimes in Florida, these are offenses for which the Legislature authorizes a law enforcement officer to take the offender into custody and transport and deliver that individual to designated persons or sites.[24] Because section 984.13, Florida Statutes, authorizes the officer to transport the child after the officer's inquiry has established that section 984.13, Florida Statutes, is implicated, there would appear to be justification for a protective frisk or pat-down prior to placing the child in the police car, in order to ensure that the child possesses no weapons or other dangerous instrumentalities.[25]
It is my opinion that a law enforcement officer, who has taken a truant or other minor into custody pursuant to section 984.13, Florida Statutes, and is transporting that minor as required by the statute, is authorized to perform a limited frisk for weapons before placing the minor in a police car. As was the case in McCargo, police departments may wish to consider implementing standardized policies on limited pat-down searches for weapons to be performed on anyone being transported in a police vehicle including truants and other minors in custody pursuant to section 984.13, Florida Statutes. The McCargo court found the existence of a departmental policy important in at least two respects: the policy both bolstered the officer safety rationale for the pat-downs and, by requiring universal application, eliminated selective-use concerns.
I would also note that Louisiana's statutory truancy scheme, which is substantially similar to Florida's, has been judicially construed to support pat-down searches of truant minors who must be transported. In terms similar to those of section 984.13, Florida Statutes, the Louisiana Children's Code authorizes a law enforcement officer to "briefly detain" any child whom the officer reasonably believes to be absent from school during normal school hours and the officer may question the child about his or her reasons for being absent. The code then requires that, based on the officer's inquiry and reasonable belief that the child is absent without justification, "the officer may release the child to his parents or transport the child to the appropriate administrator of the child's assigned school or to a receiving center designated by the parish school board for acceptance of such children. As is the case in Florida, the officer, after determining that the juvenile is truant, may either release the juvenile to his or her parents or transport him or her to school or to a receiving center.[26]
In State of Louisiana In the Interest of R.D., [27] a police officer, who knew R.D. to be a student at a local junior high school, stopped R.D. to verify that he was truant and then determined to transport him back to school or to his parents. The officer executed a pat-down search prior to placing R.D. in his patrol car and discovered drugs. The appellate court considered the validity of the pat-down in light of Louisiana's characterization of truancy as a non-criminal offense. The court observed that truancy in Louisiana is not a crime, but that it is an offense that authorizes a law enforcement officer to take a minor into custody and transport him. The court reasoned that at this point the juvenile "was in full custodial detention" and was not free to go. Further, because Louisiana's statute authorized the officer to transport the child after his inquiry established reasonable cause to believe the child truant, the court found justification for a protective frisk prior to placing the child in the police car, in order to ensure that the child had no weapons or other dangerous instrumentalities.
Like Florida's statute, the Louisiana Children's Code provision does not make the offense of truancy a crime subjecting the minor to arrest. However, in both states' statutes, once the officer has determined that the minor is violating the compulsory school attendance laws, an officer may take the minor into custody. Further, because each state's statutory scheme authorizes the transportation of a truant minor by the Mr. officer after his inquiry establishes a probable violation, it would appear reasonable to assume that Florida courts, like Louisiana's, would recognize the validity of a protective frisk, undertaken by the officer prior to placing a minor in a police car for the purpose of transporting him or her, to ensure that the minor possesses no weapons or other dangerous instrumentalities.
In sum, it is my opinion that based on the increased threat to officer safety involved in transporting offenders in a patrol vehicle, a law enforcement officer who has taken a minor into custody pursuant to section 984.13, Florida Statutes, and is transporting that minor may perform a limited frisk or pat-down for weapons before placing the minor in a law enforcement vehicle in order to ensure that the minor possesses no weapons or other dangerous instrumentalities. In addition, as was the case inMcCargo, a law enforcement agency may wish to consider adopting a departmental policy requiring the pat-down of anyone being transported in a police vehicle to ensure officer safety, including minors taken into custody pursuant to section 984.13, Florida Statutes.
Sincerely,
 Pam Bondi Attorney General
PB/tgh
[1] While your question is phrased more broadly, your examples and discussion involve juveniles suspected of being truant, runaway, or generally in need of assistance and transportation pursuant to s. 984.13, Fla. Stat., and my consideration and response will be limited to the factual premise of minors taken into custody pursuant to s. 984.13, Fla. Stat., who must be transported pursuant to that section.
[2] Mapp v. Ohio, 367 U.S. 643 (1961), rehearingdenied, 368 U.S. 871 (1961).
[3] Article I, s. 12, Fla. Const., was amended in 1982 by H.J.R. No. 31-H, adopted by the electorate at the November 1982 general election, which provides that the right to be free from unreasonable searches and seizures shall be construed in conformity with the 4th Amendment to the United States Constitution
and provides that illegally seized articles or information are inadmissible if decisions of the United States Supreme Court make such evidence inadmissible.
[4] Delaware v. Prouse,440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), citingMarshall v. Barlow's, Inc.,436 U.S. 307, 312, 98 S.Ct. 1816, 1829 (1978), quoting Camara v.Municipal Court, 387, U.S. 523, 528, 87 S.Ct. 1727, 1730, 18 L. Ed. 2d 930 (1967).
[5] Id. at 654. See Hiibel v. Sixth Judicial Dist. Court ofNevada,542 U.S. 177, 187-188, 124 S.Ct. 2451, 159 L. Ed. 2d 292 (2004);see also United States v. Knights,534 U.S. 112, 118, 122 S.Ct. 587, 151 L. Ed. 2d 497 (2001) ("The touchstone of the Fourth Amendment is reasonableness. . . .").
[6] Section 984.13(2)(a), Fla. Stat.
[7] See A.B.S. v. State, ___ So. 3d ___,2010 WL 5381757 (Fla. 2d DCA 2010); L.C. v. State,23 So. 3d 1215 (Fla. 3d DCA 2009); C.G. v. State,689 So. 2d 1246, 1247 (Fla. 4th DCA 1997); see also Kazanjian v.School Board of Palm Beach County,967 So. 2d 259, 263 (Fla. 4th DCA 2007) (stating that the primary purpose of Florida's truancy laws is to promote academic success);J.M.J. v. State, 389 So. 2d 1208, 1210 (Fla. 1st DCA 1980) ("It is apparent that the legislature, in deliberate wisdom, chose to classify . . . habitual truants only as dependent children, providing the court with a flexible range of placement options to meet the child's need for supervision."); 78A C.J.S. Schools andDistricts s. 1028 (2009) ("An `arrest' by an officer under a truancy statute is a severely limited type of arrest, the sole purpose of which is to quickly place the minor in a school setting, and the arresting officer may not use the truancy arrest as a pretext for investigating criminal matters.").
[8] Compare A.J.M. v. State,746 So. 2d 1222 (Fla. 3d DCA 1999) and T.L.M. v. State,371 So. 2d 688 (Fla. 1st DCA 1979), involving criminal juvenile defendants who were subjected to searches or pat-downs incident to arrest and concluding that a police officer may validly pat-down a juvenile criminal offender prior to transporting him or her.
[9] 23 So. 3d 1215 (Fla. 3d DCA 2009).
[10] Cf. State v. Mejia, 579 So. 2d 766 (Fla. 3d DCA 1991) (finding a search of a person incident to arrest as a recognized exception to the search warrant requirement).Compare E.P. v. State, 997 So. 2d 1240 (Fla. 3d DCA 2008), which was cited by the court in L.C. and in which the court found that "no error has been demonstrated in the denial of a motion to suppress drug paraphernalia found on the juvenile's person after a pat down which followed a Terry stop justified under section 984.13, Florida Statutes (2007) . . . and justifiably preceded placing him in the police car for the purpose of taking him to school as the statute requires."
[11] Citing Knowles v. Iowa,525 U.S. 113, 117, 119 S.Ct. 484, 142 L. Ed. 2d 492 (1998) (recognizing the concern for officer safety as a justification for additional "minimal" intrusion of ordering driver and passengers out of the car where officer stopped motorist for speeding and issued him a citation rather than arrest him, but stating greater intrusion of full field-type search not justified).
[12] See Ybarra v. Illinois,444 U.S. 85, 93, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979) stating that a law enforcement officer "for his own protection and safety, may conduct a patdown to find weapons that he reasonably believes or suspects are then in the possession of the person he has accosted."And see A.B.S. v. State, ___ So. 3d ___,2010 WL 5381757 (Fla. 2d DCA 2010) (involving a runaway pursuant to section 984.13, Fla. Stat., and responding to the officer's admission that he searched A.B.S. solely because it was his policy to search people before transporting them in his cruiser with a statement from L.C. that "we are aware of no case that stands for the proposition officers can search an individual without having performed a pat-down simply because the individual is being placed in a police vehicle").
[13] But see E.P. v. State,997 So. 2d 1240 (Fla. 3d DCA 2008), an earlier Third District case that was cited by the court in L.C., but that the court apparently did not consider dispositive of the question. In E.P., the court found that "no error has been demonstrated in the denial of a motion to suppress drug paraphernalia found on the juvenile's person after a pat down which followed a Terry stop justified under section 984.13, Florida Statutes (2007) . . . and justifiably preceded placing him in the police car for the purpose of taking him to school as the statute requires."
[14] 464 F.3d 192 (N.Y. 2d Cir. 2006).
[15] Id. at 196.
[16] 392 U.S. 1, 20, 88 S.Ct. 1868, 20 L. Ed. 2d 889 (1968).
[17] Id. at 27.
[18] Supra n. 19 at 199.
[19] Id. at 200.
[20] Id.
[21] Id.
[22] Supra n. 23 at 201.
[23] Id. at 202.
[24] And see ss. 1002.20(2)(a) and 1003.21, Fla. Stat., which provide for compulsory school attendance.
[25] Cf. E.P. v. State, 997 So. 2d 1240 (Fla. 3d DCA 2008) (involving denial of a motion to suppress drug paraphernalia found on the juvenile's person "after a pat down which followed aTerry stop justified under section 984.13, Florida Statutes (2007) . . . and justifiably preceded placing him in the police car for the purpose of taking him to school as the statute requires").
[26]
LSA-Ch.C. Art 733.1 (Louisiana Children's Code Article 733.1).
[27] 749 So. 2d 802 (La. 5th Cir. 1999).