571 A.2d 1389

COMMONWEALTH of Pennsylvania, Appellee,

v.

Sandy Michael NACE, Appellant.

Supreme Court of Pennsylvania.

Submitted April 14, 1989.

Decided March 19, 1990.

---

1. It would also follow that appellee is not entitled to *compel* either the *mother* or the *child* to undergo testing.

Howard F. Knisely, Lancaster, for appellant.

Joseph C. Madenspacher, Asst. Dist. Atty., for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

We granted limited review in this case to examine whether the police exceeded the proper scope of an inventory search in examining an address book seized from Appellant pursuant to *Commonwealth v. Scott,* 469 Pa. 258, 365 A.2d 140 (1976), and *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). In *Scott* we upheld the admissibility of incriminating evidence found in a warrantless inventory search of an impounded automobile and further determined that such searches are reasonable where they do not go beyond the formalities of an inventory search into a criminal investigation.

Because the evidence seized from the Appellant in this case was part of a routine inventory search, we hold that *Scott* is applicable here. Accordingly, the evidence seized was fully admissible as determined by the courts below.

The underlying facts indicate that on July 26, 1985, Appellant and two confederates (not parties in this appeal), were taken into custody and questioned regarding the murders of Sandra L. Wiker and Paul R. Conrad. Sometime during that day, Appellant was arrested and taken to the "slating" desk where his clothing and other personal effects were removed and placed in a wood possession box. "Slating" is the procedure whereby a prisoner is placed in a holding cell, his possessions are taken from him, inventoried and placed in a box at the slating counter for safe keeping, until the prisoner is released from custody.

During the making of an inventory of Appellant's personal effects, the police took his wallet, opened it, and saw a slim address book which they removed. On the outside back cover of the book was a telephone number later identified as that of victim Conrad. The book was retained

by the police and used at trial to help link the victim and the Appellant because of the phone number written on the cover and the corroborative testimony of Marcellus Barnett.

Following this inventory search, the police obtained a search warrant for the home of Appellant's mother and one for his person. Blood, hair, fingernail, and body fluid samples were taken and eventually introduced against him at trial. The warrant for Appellant listed various items of clothing but did not include the wallet or the address book.

Although he was under arrest on July 26, 1985, Appellant was released on the same day. On November 8, 1985, he was arrested again and formally charged with the homicides. The killings resulted from the robbery of an apartment occupied by the victims who were found bound and gagged, felled by blows from a sharp instrument, and strangled. Appellant was convicted by a jury of two counts of murder of the second degree and was sentenced to two consecutive life sentences.

The issue before us is the admissibility of the address book containing the telephone number of the victim, Paul Conrad.

Testimony at trial established that the Appellant asked for this phone number from Marcellus Barnett, a prosecution witness, who admitted giving the phone number to Appellant and who stated that he saw him write the number on the outside of the address book. Testimony from the police officers who conducted the inventory search of Appellant's clothing established that they found the address book in Appellant's wallet and that they did not open it, but merely examined the outside of the book for identifying markings.

In challenging the admissibility of the book and its telephone number, Appellant argues that its use exceeded the boundaries of a lawful inventory search since the authorities already knew his own identity, address, and phone number. Accordingly, there was no need to open the wallet and to look at the book. In sum, Appellant urges this Court

to find that the search was part of the police's criminal investigation of this case and for that reason should have been predicated upon probable cause.

The allegation does not call into question the validity of our law on inventory searches but rather insists that the facts of this case demonstrate that the police went beyond the permissible scope of a search that the law permits.

As noted earlier, inventory searches are a well-defined exception to the warrant requirement of the Fourth Amendment and are a recognized part of our law:

> ... it is reasonable for police to search the personal effects of a person under lawful arrest as part of the routine administrative procedure at a police station house incident to booking and jailing the suspect. The justification for such searches does not rest on probable cause, and hence the absence of a warrant is immaterial to the reasonableness of the search. Indeed, we have previously established that the inventory search constitutes a well-defined exception to the warrant requirement. See *South Dakota v. Opperman, supra.*

An inventory search is not designed to uncover criminal evidence. Rather, its purpose is to safeguard the seized items in order to benefit both the police and the defendant. We have recognized inventory searches in the two areas of automobiles and booking procedures. See, *Scott; Commonwealth v. Daniels,* 474 Pa. 173, 377 A.2d 1376 (1977).

Four goals underlie such searches. First, they protect the defendant's property while he is in custody; second, police are protected against theft claims when defendants are given their property upon release; third, they serve to protect the police from physical harm due to hidden weapons; and fourth, when necessary they ascertain or verify the identity of the defendant. Intrusions into impounded vehicles or personal effects taken as part of the booking process are reasonable where the purpose is to identify and protect the seized items.

■ As long as the search is pursuant to the caretaking functions of the police department, the conduct of the police will not be viewed as unreasonable under the Constitution. See *Scott*, 469 Pa. at 267, 365 A.2d at 144.

■ In the case under review, Appellant alleges that, lacking any other motive to open his wallet and look at the address book, the police were engaged in a search for inculpatory evidence. The search, in short, was unreasonable and violated *Scott*'s warning that the "search was free of any pretext of investigating motives." 469 Pa. at 267, 365 A.2d at 144. We disagree.

Appellant points to nothing in this record to establish that the search of the wallet went beyond the making of a routine inventory search. Looking into the wallet is justified as part of the process of cataloguing the contents of the wallet legally taken from Appellant. The authorities had every right to open the wallet to see if it had any money or other valuables in it so that it could be counted and marked on the inventory sheet and in that way prevent Appellant from alleging that more money was present in the wallet upon his release. Likewise, since the police had the right to open the wallet to count any money that might be therein they also had the right to remove anything else that might be in the wallet, examine it for identifying marks and inventory same.

No warrant was needed to retrieve this information or the book that it was found on, and the book, therefore, was properly introduced at trial against Appellant.

The order of the Superior Court, 375 Pa.Super. 620, 541 A.2d 31, is affirmed.

NIX, C.J., files a dissenting opinion in which ZAPPALA, J., joins.

NIX, Chief Justice, dissenting.

I am constrained to reject the naivete upon which the majority premises its position. Appellant asserts that the police were engaged in a search for inculpatory evidence.

A realistic assessment of the record confirms that charge. The police had the right to open the wallet and to identify its contents pursuant to a lawful inventory search. However, it was not necessary to record a telephone number appearing on the back cover of the address book to identify it as an article in the possession of the appellant at the time of his initial arrest. Nor can I accept as a coincidence that the telephone number in question proved to be a vital piece of evidence in establishing appellant's guilt. The instant factual situation does not fall within a lawful "caretaking search of ... lawfully impounded ... [articles] ... which was free of any pretext of investigatory motives...." *Commonwealth v. Scott*, 489 Pa. 258, 267, 365 A.2d 140, 144 (1976).

I dissent.

ZAPPALA, J., joins in this dissenting opinion.