J-S71025-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JESSICA D. HAVELT | |
| Appellant | No. 611 MDA 2014 |

Appeal from the Judgment of Sentence March 12, 2014
In the Court of Common Pleas of Franklin County
Criminal Division at No(s): CP-28-CR-0000745-2012

BEFORE: FORD ELLIOTT, P.J.E., PANELLA, J., and FITZGERALD, J.[*]

MEMORANDUM BY PANELLA, J.                **FILED FEBRUARY 18, 2015**

Appellant, Jessica D. Havelt, appeals from the judgment of sentence entered upon convictions for driving under the influence ("DUI") of marijuana and possession of a small amount of marijuana. After careful review, we affirm.

On December 19, 2011, Pennsylvania State Police Trooper Alex Grote observed a dark colored SUV driving between the lane of travel and a turn-only lane for approximately 2 to 3 seconds before returning fully to the lane of travel. Trooper Grote followed the SUV for another 3/10 of mile, estimating the rate of travel to be 60 mph in a 45 mph zone. During this time, Trooper Grote twice more observed the SUV straddle two lanes for

---

[*] Former Justice specially assigned to the Superior Court.

extended periods. At this time, Trooper Grote pulled the SUV over to investigate.

Upon making contact with the driver, Havelt, Trooper Grote immediately noticed a strong odor of burnt marijuana. While Havelt retrieved her driver's license, Trooper Grote observed that her general demeanor was lackadaisical and slow moving. Trooper Grote asked Havelt to follow his finger with her eyes so that he could observe her pupil size and ability to track. While performing this test, Trooper Grote noticed that Havelt's eyes were very bloodshot and glassy. Trooper Grote then asked Havelt to stick out her tongue. When Havelt complied, he observed that her tongue had a bright green tinge, which he recognized as an indicator of marijuana use. Pursuant to these observations, Trooper Grote asked Havelt to exit her vehicle.

Havelt exited her vehicle, and Trooper Grote had her perform a field sobriety test. After observing Havelt's performance, and considering his previous observations, Trooper Grote suspected that Grote was under the influence of marijuana. At this point, he intended to arrest her, and instructed her to turn around as he approached her to handcuff her. As he approached, he asked her how much marijuana she had smoked that night.

Havelt responded that she had smoked "a bowl." Trooper Grotehad not yet provided her with **Miranda**[1] warnings.

Trooper Grote transported Havelt to a local hospital, where blood was drawn for testing. The blood test results ultimately revealed that marijuana metabolites were in Havelt's blood. Trooper Grote then transported Havelt to the State Police barracks for processing. While at the barracks, Trooper Grote's partner, Trooper Kevin Goss, searched Havelt's purse, and found a small amount of marijuana.

Havelt filed a pre-trial motion seeking suppression of her statements while being placed under arrest, as well as the marijuana found in her purse. The trial court denied the suppression motions, and Havelt proceeded to a bench trial. The trial court found Havelt guilty of one count of DUI – controlled substance, one count of DUI – Drugs or Combination of Drugs, and one count of possession of a small amount of marijuana. The trial court then sentenced Havelt to a term of imprisonment of 10 days to 6 months on the DUI charges, and a consecutive term of probation of 30 days on the possession charge. This timely appeal followed.

On appeal, Havelt argues that the trial court erred in denying her suppression motions. In **Commonwealth v. Scott**, 878 A.2d 874 (Pa.

---

[1] **Miranda v. Arizona**, 384 U.S. 436 (1966)

Super. 2005), we set forth the appropriate standard of review where an appellant appeals the denial of a suppression motion:

> [W]e are limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We may consider the evidence of the witnesses offered by the prosecution, as verdict winner, and only so much of the defense evidence that remains uncontradicted when read in the context of the record as a whole. We are bound by facts supported by the record and may reverse only if the legal conclusions reached by the court below were erroneous.

*Id*., at 877 (citations omitted).

First, Havelt contends that the trial court erred in denying suppression of her statements made prior to receiving *Miranda* warnings. Police officers are required to provide *Miranda* warnings only where a suspect is subjected to custodial interrogation. *See Commonwealth v. Smith*, 575 Pa. 203, 224, 836 A.2d 5, 18 (2003). "The law is clear that *Miranda* is not implicated unless the individual is in custody *and* subjected to interrogation. Interrogation is defined as police conduct calculated to, expected to, or likely to evoke admission." *Commonwealth v. Umstead*, 916 A.2d 1146, 1152 (Pa. Super. 2007) (internal quotation marks and citations omitted). Mere questioning of a motorist during a traffic stop is not a custodial detention, and therefore *Miranda* warnings are not required before such questioning. *See Berkemer v. McCarty*, 468 U.S. 420, 435-442 (1984). Furthermore, sobriety tests do not automatically transform a traffic stop into a custodial

detention. *See Commonwealth v. Sullivan*, 581 A.2d 956 (Pa. Super. 1990).

Here, the dispute centers on whether Havelt was in custody at the time Trooper Grote asked how much marijuana she had smoked that night. Havelt asserts that she was in custody; the Commonwealth argues, and the trial court found, that she was not.

The following factors have been used to assist courts in determining whether a detention has risen to the level of an arrest:

> The facts a court utilizes to determine, under the totality of the circumstances, whether a detention has become so coercive as to constitute the functional equivalent of arrest include: the basis for the detention; its length; its location; whether the suspect was transported against his or her will, how far, and why; whether restraints were used; whether the law enforcement officer showed, threatened or used force; and the investigative methods employed to confirm or dispel suspicions.

*Commonwealth v. Levanduski*, 907 A.2d 3, 24 (Pa. Super. 2006) (*en banc*). The test for whether a person is in custody for the purposes of *Miranda* "focuses on whether the individual being interrogated reasonably believes his freedom of action is being restricted." *Commonwealth v. Gonzalez*, 979 A.2d 879, 888 (Pa. Super. 2009) (citations omitted).

The trial court held three hearings on the motions to suppress. At the initial hearing, Trooper Grote testified as follows:

Q:   What did you do after the lack of convergence test?

A:   I placed her under arrest for suspicion of DUI.

Q: What was your reasoning for suspecting that she was under the influence?

A: I did do something prior to that, but …

Q: Okay. What did you do prior to that?

A: Knowing that she had been smoking marijuana, I asked her much she smoked.

Q: Okay. Did she – how – let me ask you this, what were you doing when you asked her that question?

A: Standing there. When we concluded field sobriety testing, we were standing there face-to-face, and I looked at her and I said, how much marijuana did you smoke? I already know that you smoke.

N.T., Pre-Trial Hearing, 2/8/13, at 36-37.

A second hearing was scheduled for February 26, 2013, but was continued after it was discovered that the Pennsylvania State Police had a mobile video recording ("MVR"), and that neither the Commonwealth nor Havelt had been provided a copy of the MVR.[2] After reviewing the MVR, Havelt filed a motion for transcription of the February 8 hearing, asserting that Trooper Grote's initial testimony from the hearing was materially inconsistent with the contents of the video. The trial court, without explanation, denied the motion.

_____

[2] The trial court noted, in its transcribed order from the bench, that there was "apparently, prior communication indicating that there was a belief that there was no MVR existing in this case and that this case has been delayed for several months." Order, 2/26/13, at *3.

A review of the transcript of the third hearing, on March 18, 2013, reveals that the exact sequence of events prior to the statement at issue was not a subject of testimony. However, at trial, Trooper Grote provided the following testimony on direct examination:

Q:     Without getting into that, the fact that she did not do a one-leg stand, why was that in your report?

A:     Because I use my reports as templates. So the DUI I made before this, I used that template to do the paperwork on the following one and I had left that in there from a previous DUI.

Q:     Is it fair to say that you did not perform anything regarding the one-leg stand?

A:     I did not. That was my mistake in the report.

Q:     So it looks like at this point in the video where the video was stopped you're placing her under arrest for suspicion of DUI?

A:     Yes.

Q:     When you did that, did she make any other statements to you?

A:     I asked her prior to placing her under arrest I believe, I'm not sure if I did place her under arrest or not, I'm not sure, but I did ask her how much weed did you smoke tonight. How much marijuana did you smoke tonight?

Q:     And what did she say?

A:     A bowl.

N.T., Trial, 12/23/13, at 42-43.[3]  When presented with the video on cross-examination, Trooper Grote's testimony was directly at odds with his testimony at the February 8 hearing:

Q:  So it is now 52:27 that you say put your hands behind your back.  I believe it was you or was it Trooper Goss?

A:  No, that was me.

Q:  And I'm assuming that you're reaching for your handcuffs at that point?

A:  Yes, sir.

Q:  Because it was your intent to place her under arrest, correct?

A:  Yes.

…

Q:  And do you recall responding … that … you're not sure when it was asked but you recall her being asked [how much marijuana she had smoked?]

A:  Yes.

---

[3] In **In re L.J.**, 79 A.3d 1073 (Pa. 2013), the Pennsylvania Supreme Court announced a prospective rule that the record for review of a suppression motion is closed at the time the trial court rules on the motion, unless the evidence was unavailable prior to the ruling.  Since the trial court in this case denied the suppression motion on June 7, 2013, more than four months before **L.J.** was filed, the prospective rule does not apply.  Furthermore, it is undenied that the MVR was unavailable for the first suppression hearing, and that Havelt was denied the opportunity to revisit Trooper Grote's testimony on the admission until trial.  As such, this case also falls under the exception to the rule announced in **L.J.**.  **See id**., at 1085 (trial evidence not relevant to review of suppression decision, "absent a finding that such evidence was unavailable during the suppression hearing.").

Q:     Let's see if we can answer that question.  It's now 52:33 in the upper right-hand corner; is that correct?

A:     Yes.

Q:     And you already got the handcuffs out and are placing them on her; is that also correct?

A:     Yes.

Q:     Now, it appears there was mumbling and it appears you were asking her something?

A:     Yes.

Q:     What were you asking her?

A:     I was asking her when the last time or, yes, when was the last time you smoked weed or how much weed did you smoke.

Q:     And you were in the process of putting her in handcuffs?

A:      I didn't put them on yet, but yes.

Q:     And that was your intent; correct?

A:     Yes.

Q:     And it's fair to say at this point there was no Miranda or anything like that, at least nothing I heard; correct?

A:     No, I didn't read them.

***Id***., at 66-68.  The Commonwealth did not rehabilitate this testimony on re-direct.

We conclude that under these circumstances, Havelt was in fact under arrest, and therefore in custody, when Trooper Grote asked about her marijuana use.  It is true that not every time an individual is placed in handcuffs is the functional equivalent of an arrest. ***See Commonwealth v.***

- 9 -

*Rosas*, 875 A.2d 341, 348 (Pa. Super. 2005); *Commonwealth v. Guillespie*, 745 A.2d 654, 660-61 (Pa. Super. 2000). However, there is no indication of any other purpose for the restraint in this case. Indeed, Trooper Grote admitted that his intent at that time was to place Havelt under arrest. Giving the Commonwealth the benefit of every inference from Trooper Grote's testimony, the best that can be said is that Havelt was in the process of being arrested when she uttered the incriminating statement at issue. Since it is undisputed that Trooper Grote's question constituted interrogation, and that he had not provided *Miranda* warnings to Havelt at the time, we conclude that the inculpatory statement should have been suppressed.

This conclusion, however, does not necessarily require re-trial. We have previously held that the erroneous admission of a confession can be harmless error, even if the confession was coerced. *See Commonwealth v. Snyder*, 60 A.3d 165, 173 (Pa. Super. 2013).

Here, we have no difficulty in finding that the error was harmless. As noted previously, Trooper Grote testified that he had already intended to place Havelt under arrest for suspicion of DUI when he asked the question, and Havelt does not contest that Trooper Grote had probable cause to initiate the arrest. Once arrested, a blood sample was taken from Havelt, which confirmed Trooper Grote's suspicions. The blood test results were stipulated to at trial and admitted as evidence. Based upon Trooper Grote's

observations prior to the statements and the blood test results, we conclude that the admission of Havelt's confession was harmless.

In her second issue, Havelt argues that the trial court erred in denying her motion to suppress the small amount of marijuana found in her purse. Havelt asserts that Trooper Goss searched her purse pursuant to an investigatory intent, and not in furtherance of an inventory search. The trial court found that the search of the purse was a valid inventory search.

The United States and Pennsylvania Supreme Courts have recognized that inventory searches are a well-defined exception to the warrant requirement of the Fourth Amendment. *See South Dakota v. Opperman*, 428 U.S. 364 (1976); *see also*, *Commonwealth v. Nace*, 524 Pa. 323, 571 A.2d 1389 (1990). Inventory searches are not subject to the warrant requirement because they are not investigatory in nature. *Commonwealth v. Smith*, 808 A.2d 215, 224 (Pa. Super. 2002). Instead, they are initiated with one or more of the following purposes in mind: (1) protection of the owner's property while it is in police custody; (2) protection of the police from disputes over claims of lost or stolen property; (3) protection of the police from potential danger; and (4) to assist the police in determining whether the vehicle was stolen and then abandoned. *Id.*

"An inventory search is reasonable if it is conducted pursuant to reasonable standard police procedures and in good faith and not for the sole purpose of investigation." *Colorado v. Bertine*, 479 U.S. 367, 374 (1987).

- 11 -

Motive distinguishes an inventory search from an investigatory search; an inventory search is motivated by a desire to safeguard the property of the arrestee, not by an aim to uncover incriminating evidence. **See Hennigan**, 753 A.2d at 255. An inventory search must be conducted in good faith, not as a substitute for a warrantless investigatory search. **See id.**; **compare Commonwealth v. Anderl**, 477 A.2d 1356, 1360 (Pa. Super. 1984) (holding inventory search invalid where officers removed automobile seats and ripped upholstery looking for contraband); **with Opperman**, 428 US. at 365 (upholding inventory search of an impounded automobile which recovered marijuana from a closed glove compartment); **see also Commonwealth v. Scott**, 365 A.2d 140, 144 (Pa. Super. 1976) (upholding use of evidence found during an inventory search of an automobile even though it was not in plain view).

While there is significant evidence of record that Trooper Goss searched Havelt's purse with an investigatory motive, there is also evidence capable of supporting the trial court's finding that the search was an inventory search. Pursuant to the stipulation of the parties, the search did not occur until Havelt was under arrest and at the State Police Barracks. Furthermore, Trooper Grote testified that the search occurred while Havelt was being processed. **See** N.T., Pre-Trial Hearing, 3/18/13, at 54-55; 65-66. Given our limited scope of review, we cannot conclude that the trial court abused its discretion or committed an error of law in concluding that

Trooper Goss's search was a valid inventory search. As a result, we conclude that Havelt's second issue on appeal merits no relief.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/18/2015