J-S43005-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
 :  PENNSYLVANIA

Appellant   :

  :

  :

v.   :

  :

  :

WILLIE SUMPTER   :   No. 519 EDA 2022

Appeal from the Order Entered February 14, 2022
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-001990-2021

BEFORE: DUBOW, J., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY DUBOW, J.:             **FILED JANUARY 11, 2023**

The Commonwealth appeals from the February 14, 2022 Order[1] entered in the Delaware County Court of Common Pleas granting Appellee Willie Sumpter's motion to suppress evidence obtained from a warrantless search of the vehicle that he was driving. After careful review, we affirm.

The relevant procedural and factual history is as follows. On December 5, 2020, the Commonwealth charged Appellee with Firearms not to be Carried Without a License, Aggravated Assault, Resisting Arrest, Possession of Marijuana, Driving an Unregistered Vehicle, Driving Without a License, and related charges.

---

[1] The Order is dated January 14, 2022, but the trial court did not docket the Order under February 14, 2022. We have changed the caption accordingly. ***See*** Pa.R.A.P. 108(a).

On July 8, 2021, Appellee filed an Omnibus Pre-Trial Motion seeking, *inter alia*, to suppress physical evidence that the Darby Borough Police Department recovered from a warrantless search of the vehicle that he was driving at the time of his arrest. Appellee argued that the police search of his vehicle violated his constitutional rights pursuant to the 4th Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution and should be suppressed. Motion to Suppress, 7/8/21, at ¶ 7.

On October 22, 2021, the trial court held a hearing on Appellee's suppression motion. The court heard testimony from Police Officer Michael Ficchi and Sauia Macey, Appellee's former paramour.

Officer Ficchi testified that on December 5, 2020, he was employed by the Darby Borough Police Department and observed Appellee driving a white 2004 Pontiac Vibe ("SUV") with a partially obstructed, improperly displayed, and fraudulent temporary registration. Officer Ficchi stopped the vehicle, approached, and requested identification or documents relating to the vehicle. Appellee refused to provide identification. Officer Ficchi noticed that Appellee was nervous and concluded "there might be a further crime afoot other than the tag itself," and requested that Appellee exit the vehicle. N.T. Hearing, 10/22/21, at 10. Appellee complied. Officer Ficchi explained that, to this point, he had not observed any criminal activity, and this was simply a stop for a motor vehicle violation. *Id.* at 24. Officer Ficchi performed a pat-down on Appellee, noticed that Appellee had a wallet in his back pocket, concluded that Appellee probably had identification in his wallet, and attempted to place

Appellee in hand restraints. At the same time, Officer Ficchi asked Appellee if there were any guns in the SUV and Appellee responded, "there's nothing that I know of." *Id.* at 27. Officer Ficchi then asked Appellee for consent to search the SUV and Appellee declined.

Before Officer Ficchi could secure the hand restraints, Appellee pushed him away and ran off. Officer Ficchi ran after Appellee, eventually caught up to him, and held him at gunpoint until assisting units arrived. Appellee refused to obey verbal commands and resisted handcuffs, but eventually police were able to handcuff Appellee. When Appellee spat at and attempted to head-butt assisting Police Officer Kennedy, Officer Kennedy tasered Appellee. Police placed Appellee under arrest.

When Officer Ficchi returned to the SUV and began searching it, he saw an open bag of marijuana in the center console, a second bag of marijuana in the rear seat inside a sweatshirt, and a Smith and Wesson 380 Special firearm loaded with three live bullets underneath the driver seat. Eventually the SUV was towed. Officer Ficchi completed a tow slip and ran the car registration.

Officer Ficchi testified that he conducted an inventory search because the SUV was stopped in the travel lane, "slightly obstructing the trolley lines." *Id.* at 16. He explained that he completed the search of the vehicle to recover "valuable items or any contraband[.]" *Id.* at 17. Officer Ficchi further explained that at that time there was a verbal police departmental policy regarding inventory searches, and he believes that a written policy now exists. Officer Fichhi did not complete an inventory search report. Officer Ficchi

testified that he could have secured the SUV to get a search warrant, but he did not. *Id.* at 32-36.

Ms. Macey testified that on December 5, 2020, she was romantically involved with Appellee and living with him. She stated that on that date, she had owned the SUV for a few months and gave Appellee permission to drive it. Ms. Macey further explained that, at the time she lent Appellee the SUV, she did not have the title and registration because she bought the SUV from an individual who became incarcerated for unrelated reasons during the transaction. N.T. Hearing, 11/3/21, at 4.

On February 14, 2022, after considering evidence and memoranda of law, the trial court granted Appellee's motion to suppress evidence.

The Commonwealth filed a timely appeal[2] pursuant to Pa.R.A.P. 311(d).[3] Both the Commonwealth and the trial court complied with Pa.R.A.P. 1925.

The Commonwealth raises the following issues for our review:

1. Did the trial court err in suppressing the gun and drugs where [Appellee] failed to prove that he had a legitimate expectation of privacy in the SUV where the owner did not give him

---

[2] As stated above, the Order is dated January 14, 2022, but the trial court did not docket the Order under February 14, 2022. In the interim, the Commonwealth filed a Notice of Appeal on February 11, 2022. Pa.R.A.P. 905(a)(5) allows for "a notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof." Pa.R.A.P. 905(a)(5). Accordingly, the Commonwealth's notice of appeal is timely.

[3] Rule 311(d) provides that "the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution." Pa.R.A.P. 311(d).

permission to use it and where he fled from the SUV, thereby abandoning any expectation of privacy in it?

2. Did the trial court err in suppressing the gun and drugs where the items were properly recovered during a legal inventory search?

Commonwealth's Br. at 3.

Our review of a grant of a suppression motion is limited to determining "whether the record supports the trial court's factual findings and whether the legal conclusions drawn from those facts are correct." ***Commonweath v. Carmenates***, 266 A.3d 1117, at 1123-24 (Pa. Super. 2021) (*en banc*) (citation omitted). "We may only consider evidence presented at the suppression hearing." ***Id.*** at 1123 (citation omitted). Additionally, "[b]ecause the defendant prevailed on this issue before the suppression court, we consider only the defendant's evidence and so much of the Commonwealth's evidence as remains uncontradicted when read in the context of the suppression record as a whole." ***Id.*** (citation omitted).

This Court is highly deferential to the suppression court's factual findings and credibility determinations. ***Commonwealth v. Batista***, 219 A.3d 1199, 1206 (Pa. Super. 2019). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. The trial court is free to believe all, some or none of the evidence presented at the suppression hearing." ***Commonwealth v. Elmobdy***, 823 A.2d 180, 183 (Pa. Super. 2003) (citations omitted). If the record supports the suppression court's findings, we may not substitute our own findings. ***Bastista***, 219 A.3d at 1206. However, we give no such

deference to the suppression court's legal conclusions and, instead, review them *de novo*. *Id.* Once a defendant files a motion to suppress, "it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." *Commonwealth v. Wallace*, 42 A.3d 1040, 1047–48 (Pa. 2012) (citation omitted); *see also* Pa.R.Crim.P. 581(H).

In the Commonwealth's first issue, it avers that Appellee did not have a reasonable expectation of privacy in the SUV where the actual owner did not give him permission to use it. Commonwealth's Br. at 12. The Commonwealth argues that Ms. Macey did not legally own the SUV and was not authorized to loan it to Appellee. Therefore, the Commonwealth asserts, Appellee did not have a legitimate expectation of privacy in the SUV. *Id.*[4]

Both the Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution "guarantee individuals freedom from unreasonable searches and seizures." *Commonwealth v. Bostick*, 958 A.2d 543, 550 (Pa. Super. 2008) (citation omitted). In Pennsylvania, a defendant charged with a possessory offense has "automatic standing" to pursue a suppression motion under Rule 581. *Commonwealth v. Enimpah*,

---

[4] The Commonwealth also argues, for the first time on appeal, that when Appellee fled from the SUV, he abandoned any expectation of privacy in it. *See* Commonwealth Br. at 15. We find this argument to be waived. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."); Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.").

106 A.3d 695, 698 (Pa. 2014). However, in addition to standing, "a defendant must show that he had a privacy interest in the place invaded or thing seized that society is prepared to recognize as reasonable." *Id.* (citation omitted). "The expectation of privacy is an inquiry into the validity of the search or seizure itself; if the defendant has no protected privacy interest, neither the Fourth Amendment nor Article I, § 8 is implicated." *Id.* at 699.

This Court has found that an expectation of privacy will exist when the individual exhibits an actual or subjective expectation of privacy and that expectation is one that society is prepared to recognize as reasonable. *Commonwealth v. Jones*, 874 A.2d 108, 118 (Pa. Super. 2005). In determining whether a person's expectation of privacy is legitimate or reasonable, we must consider the totality of the circumstances and the determination "ultimately rests upon a balancing of the societal interests involved." *Commonwealth v. Peterson*, 636 A.2d 615, 619 (Pa. 1993) (citations omitted). "The constitutional legitimacy of an expectation of privacy is not dependent on the subjective intent of the individual asserting the right but on whether the expectation is reasonable in light of all the surrounding circumstances." *Commonwealth v. Viall*, 890 A.2d 419, 422 (Pa. Super. 2005) (citation omitted).

In *Byrd v. United States*, 138 S.Ct. 1518 (2018), the United States Supreme Court held that a driver in otherwise legal possession and control of a rental car had a reasonable expectation of privacy in that car even when the rental agreement did not list him or her as an authorized driver. *Id.* at 1531.

The Court explained, "[o]ne who owns and possesses a car, like one who owns and possesses a house, almost always has a reasonable expectation of privacy in it. More difficult to define and delineate are the legitimate expectations of privacy of others." *Id.* at 1527. "[I]t is by now well established that a person need not always have a recognized common-law property interest in the place searched to be able to claim a reasonable expectation of privacy in it." *Id.* Indeed, "[o]ne of the main rights attaching to property is the right to exclude others [and] one who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of the right to exclude." *Id.* (citations omitted).

Instantly, the trial court found Ms. Macey's testimony credible that she owned the SUV and allowed Appellee to drive the SUV. Order, 2/14/22, at 3. When the trial court concluded that Appellee had a reasonable expectation of privacy in the SUV, the court considered the totality of the circumstances and placed great weight on Ms. Macey's testimony as well as the fact that Officer Ficchi asked Appellee for permission to search the SUV. The trial court opined:

> Appellee's witness Sauia Macey testified at the suppression hearing she authorized Appellee to drive her car. Additionally, [Officer] Ficchi recognized Appellee's expectation of privacy in the vehicle when he specifically asked Appellee if he would provide consent to a search of his vehicle. Appellee in this case exhibited an expectation of privacy when he declined to provide consent to a search of the vehicle. This court concluded the Commonwealth conceded Appellee's expectation of privacy in the vehicle when [Officer] Ficchi at the suppression hearing asked Appellee to consent to a search, and based on Ms. Macey's testimony and the testimony concerning Appellee's refusal to consent to a search, Appellee exhibited an expectation of privacy in the vehicle.

> Contrary to [the Commonwealth]'s assertion, this court determined, based on the evidence provided by the witnesses at the suppression hearing [and the] totality of circumstances set forth in the record, Appellee established he exhibited an expectation of privacy in the vehicle.

Trial Ct. Op., filed 4/18/22, at 6 (party titles amended).

In light of the trial court's findings of fact, which the record supports, we discern no error of law in the trial court's conclusion that Appellee had a reasonable expectation of privacy in the SUV. Appellee had permission from the putative owner of the SUV to drive it and attempted to exclude Office Ficchi from searching it, facts which support the trial court's conclusion that Appellee had a reasonable expectation of privacy in the SUV.

The Commonwealth cites **Commonwealth v. Burton**, 973 A.2d 428 (Pa. Super. 2009), **Commonwealth v. Cruz**, 21 A.3d 1247 (Pa. Super. 2011), and **Commonwealth v. Brown**, 64 A.3d 1101 (Pa. Super. 2011), to support its argument that Appellee did not establish a reasonable expectation of privacy in the borrowed SUV. All of these cases are easily distinguished because, unlike in the instant case, none of the cases contained testimony that the defendant had permission to drive the vehicle.[5] Accordingly, we remain unpersuaded by the Commonwealth's argument.

_____

[5] In **Burton**, this Court held that the defendant, the driver and lone occupant of the vehicle, failed to demonstrate that he had a reasonable expectation of privacy in a vehicle that he did not own, that was not registered to him, and for which he did not show authority to operate. 973 A.2d 436. In **Brown**, this Court held that the defendant failed to establish a reasonable expectation of privacy in a vehicle where defendant failed to present a connection to the owner or permission to operate the vehicle. 64 A.3d 1107. In **Cruz**, this Court
*(Footnote Continued Next Page)*

In its second issue, the Commonwealth asserts that even if Appellee had a reasonable expectation of privacy in the SUV, the trial court erred when it granted Appellee's suppression motion because the police found the evidence pursuant to a valid inventory search. Commonwealth Br. at 19.

Inventory searches are a well-defined exception to the warrant requirement of the Fourth Amendment. *Commonwealth v. Nace*, 571 A.2d 1389, 1391 (Pa. 1990). Upon lawfully impounding a vehicle, the police may conduct an inventory search of the vehicle pursuant to reasonable, standard protocols. *Commonwealth v. Hennigan*, 753 A.2d 245, 255 (Pa. Super. 2000). Because the search is intended to safeguard seized items, and not for investigatory purposes, the search does not need to be authorized by a warrant or supported by probable cause. *Id.*

"In determining whether a proper inventory search has occurred, the first inquiry is whether the police have lawfully impounded the automobile, *i.e.,* have lawful custody of the automobile." *Commonwealth v. Henley*, 909 A.2d 352, 359 (Pa. Super. 2006) (citation omitted). "The second inquiry is whether the police have conducted a reasonable inventory search." *Id.* (citation omitted).

"An inventory search is reasonable if it is conducted pursuant to reasonable standard police procedures and in good faith and not for the sole

---

held that the defendant did not have a reasonable expectation of privacy in a vehicle where he presented no evidence that he owned the vehicle, that it was registered in his name, or that he was using it with permission of the owner. 21 A.3d 1251.

purpose of investigation." ***Id.*** The inventory search is not a substitute for a warrantless investigatory search. ***Id.***

Here, the trial court found that the police failed to conduct a good faith search that was reasonable pursuant to standard police procedures. The trial court emphasized Officer Ficchi's testimony that he searched the SUV for "valuable items or any contraband" prior to towing the vehicle, revealing that the search was—at least in part—for investigatory purposes. Order, 2/14/22, at 2 (citing N.T. Hearing, 10/22/21, at 17). The trial court also found that the Commonwealth failed to establish that the police were acting according to an established police protocol, opining:

> [Officer] Ficchi testified law enforcement could have secured the vehicle and obtained a warrant, but they did not. [Officer] Ficchi also testified: the police department had an unwritten policy for the conduct of inventory searches; he did not complete an inventory search report; he did not mention the search he conducted was an inventory search in any of the reports he prepared, including the affidavit of probable cause[.] In view of the record established at the suppression hearing, this court concluded the Commonwealth failed to show the search was within the police department's standard policy of routinely censuring and inventorying contents of impounded vehicles, the Commonwealth did not establish the inventory search of the vehicle was proper.

Trial Ct. Op. at 7-8.

Upon review, the record supports the trial court's factual findings and we discern no error in the trial court's legal conclusions. In light of Officer Ficchi's testimony that he was searching for contraband, it was reasonable for the trial court to conclude that the search was for investigative purposes and, therefore,

- 11 -

improper. ***See Commonwealth v. Casanova***, 748 A.2d 207, 212 (Pa. Super. 2000) ("Once the police suspected that there was contraband in the vehicle, they could no longer classify their search as one done for inventory purposes."). Accordingly, we conclude that the trial court did not err when it granted Appellee's suppression motion.

In conclusion, we affirm the trial court's order granting Appellee's motion to suppress evidence derived from Officer Ficchi's search of the SUV.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/11/2023