J-A15004-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| RAYVON TIREK STRANGE | : | |
| Appellant | : | No. 1122 MDA 2023 |

Appeal from the Judgment of Sentence Entered May 30, 2023
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0002847-2021

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| Appellant | : | |
| v. | : | |
| RAYVON TIREK STRANGE | : | No. 1136 MDA 2023 |

Appeal from the Judgment of Sentence Entered May 30, 2023
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0002847-2021

BEFORE:   DUBOW, J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED: AUGUST 9, 2024**

In these cross-appeals, Appellant, Rayvon Tirek Strange, and the Commonwealth appeal from the May 30, 2023 judgment of sentence entered in the Dauphin County Court of Common Pleas following Appellant's conviction by a jury of Carrying a Firearm Without a License, four counts of Possession

---

[*] Former Justice specially assigned to the Superior Court.

with Intent to Deliver, and Possession of Drug Paraphernalia.[1]  Appellant challenges the denial of his suppression motion.  The Commonwealth challenges the denial of its post-sentence motion.  After careful review, we affirm the order denying Appellant's motion to suppress, reverse the trial court's order denying the Commonwealth's post-sentence motion, vacate Appellant's judgment of sentence, and remand for resentencing.

The relevant facts and procedural history are as follows.  On May 24, 2021, at about 2:00 AM, Harrisburg City Police Corporal Brandon Braughler observed Appellant driving a vehicle the wrong way on a one-way street. Corporal Braughler activated his emergency lights and sirens and initiated a traffic stop.  Appellant brought the vehicle to a stop still facing the wrong direction on the one-way street and blocking the flow of traffic.

Corporal Braughler, wearing a body camera, exited his patrol vehicle, approached the vehicle, and spoke with Appellant.  Appellant informed Corporal Braughler that he did not have his driver's license, identification card, or any other document bearing his name.  Appellant identified himself as "Rayvone Strange"[2] numerous times orally and in writing and told Corporal Braughler that his date of birth was February 28, 1985.  Appellant stated that

---

[1] 18 Pa.C.S. § 6106(a)(1) and 35 P.S. §§ 780-113(a)(30) and (32), respectively.  The jury also convicted Appellant of Person not to Possess a Firearm, 18 Pa.C.S. § 6105, but the trial court subsequently granted Appellant's post-sentence motion seeking a judgment of acquittal and vacated that conviction.

[2] Appellant's first name is actually "Rayvon."

he had a Virginia driver's license. However, Corporal Braughler was unable to find anyone matching Appellant's name and birth date in either the Pennsylvania or Virginia databases. Corporal Braughler then informed Appellant that he was under police investigation, whereupon Appellant suggested that Corporal Braughler check his information through Georgia's database. When that search was also negative for a match, Appellant told Corporal Braughler to try spelling Appellant's name without the "e" at the end. While Corporal Braughler began to take Appellant into custody for fingerprint identification, Dauphin Count dispatch notified Corporal Braughler that it had found a match for Appellant, but that he did not have a valid driver's license, only a Pennsylvania identification card.

Corporal Braughler determined that the vehicle was registered to EAN Holdings d/b/a Enterprise Rent-A-Car. The rental agreement for the vehicle was in the name of Stephen Reiley of Harrisburg, but Mr. Riley was not in the vehicle. Appellant told Corporal Braughler that the car had been rented by a family member but was unable to provide Corporal Braughler with any other information about the renter.

Bobbi Zelko, who had a suspended driver's license and an outstanding arrest warrant from Lancaster County, was in the passenger seat of the car. She informed the officers that there were needles present in the car. Corporal Braughler took Ms. Zelko into custody on the outstanding warrant.

Because neither Appellant nor Ms. Zelko were lawfully permitted to operate an automobile, Corporal Braughler determined that Sections II-A-4

and II-A-13 of the Harrisburg Police Towed and Abandoned General Order Number 7-47 ("Tow Policy") authorized him to tow the vehicle. Pursuant to the Tow Policy, once officers impound a vehicle, they must conduct an inventory search in accordance with protocols outlined in the Harrisburg Bureau of Police Patrol Manual ("Patrol Manual"), to identify any items of value for safekeeping or items that may present a danger to a tow company, a rental company, or the vehicle's owner. The Patrol Manual specifically indicates that officers may not conduct an inventory search for the sole purpose of looking for evidence. A police inventory search extends to the entire vehicle, including containers or bags located therein, but the Patrol Manual explicitly prohibits officers from searching locked containers.

Officer Braughler and other officers, including Harrisburg Police Officer Weist, searched the vehicle. While conducting their search, the officers noted the presence of a locked metal case, but the officers did not open or search it. Officers notified Corporal Braughler that they saw needles in the back seat. Officer Braughler replied that "it was not worth getting stuck over. I just want to make sure you don't miss a gun." N.T. Suppression, 11/10/21, at 25. Officer Sethton Weist found a black zippered bag in the area of the driver's seat floor next to the center console, within reach of where Appellant had been sitting. The bag contained a loaded 9 mm handgun,[3] a green pill bottle with no prescription label and pills, $1,300 in U.S. currency, and drug

---

[3] Corporal Braughler ran the firearm's serial number through Dauphin County Dispatch; there was, however, no record of its sale.

paraphernalia. Corporal Braughler called a "Signal 5" into dispatch to indicate that the officers had recovered a firearm and documented the firearm recovery in the County Dispatch System, pursuant to the Tow Policy. Officer Weist also found three black zippered bags on the front passenger floor of the vehicle that contained drug paraphernalia and $406.92 in U.S. currency. Officers also found multiple types of narcotics packaged for sale.

Several minutes after the officers began their inventory search, an unknown male arrived at the scene and indicated that he was the vehicle's renter. He did not identify himself. Corporal Braughler informed the man that the vehicle was being towed and then returned to Enterprise.

Officers searched Appellant incident to arrest and located his Pennsylvania identification card and $361.75 in U.S. currency.

Later that same day, Corporal Braughler completed a Towed Vehicle Inventory Sheet and a Towed Vehicle Report pursuant to Sections I-B and I-C of the Tow Policy. The report included the inventory of the items discovered during the inventory search of the vehicle.

Based on the above facts, the Commonwealth charged Appellant with firearms and drug offenses.

On September 23, 2021, Appellant filed an omnibus pretrial motion seeking the suppression of all physical evidence obtained from the inventory search. Appellant alleged that the police officers conducted the inventory search in bad faith and pretextually to circumvent the requirement that they obtain a warrant and that the Harrisburg Police inventory search policy

"provides **no** guidance to officers relating to container searches" and is therefore unconstitutional. Motion, 9/23/21, at 10 (emphasis in original).

On November 10, 2021, the trial court held a hearing on Appellant's suppression motion, at which Corporal Braughler testified in accordance with the above facts. Corporal Braughler also testified regarding his comment that Officer Wiest not "miss the gun." Corporal Braughler explained that by this comment he sought to emphasize to Officer Wiest, who was a probationary officer in training, the importance of locating a gun, if any, so that the officers do not inadvertently return a car "with a gun to the tow driver or the rental car company[.]" N.T. Suppression at 26. With respect to his comment that "it's not worth getting stuck over," Corporal Braughler testified that, given that Ms. Zelko had informed him that there were needles in the car, he was "looking out for [Officer Weist's] safety" by instructing Officer Weist not to reach under the seat to avoid being stuck by a needle. With respect to container searches, Officer Braughler testified that both the Tow Policy and the Patrol Manual are "silent" as to container searches. *Id.* at 31-32.

In addition to live testimony, the Commonwealth played the video recorded by Officer Braughler's body camera that captured images of Officer Braughler looking at a container with a combination lock, realizing it was locked, and stopping his attempts to open and search the container. The body camera also recorded the officers communicating about the items they recovered and discussing the appropriate method of bagging them and Officer

Braughler placing the recovered items in front of the body camera and audibly identifying them.[4]

The trial court denied Appellant's motion to suppress on the record immediately following the presentation of evidence.

Following Appellant's trial, the jury convicted him of the above crimes and Persons not to Possess a Firearm.[5] On November 7, 2022, the trial court sentenced Appellant to an aggregate term of five to ten years of incarceration. Relevantly, the court imposed a sentence of five to ten years of incarceration for Appellant's conviction of Firearms not to be Carried without a License based on an Offense Gravity Score ("OGS") of nine.[6]

On November 16, 2022, Appellant filed a post-trial motion seeking modification of his sentence, arrest of judgment as to all counts, and a judgment of acquittal as to the Persons not to Possess a Firearm conviction.

---

[4] Mr. Reiley testified on Appellant's behalf that he had rented the vehicle Appellant was driving on the night of Appellant's arrest and that he had permitted Appellant to operate it.

[5] 18 Pa.C.S. § 6105. Appellant has a prior conviction in Georgia for a drug offense.

[6] *See* 204 Pa. Code § 303.15 (listing OGS of nine for a conviction of 18 Pa.C.S. § 6016(a)(1) where the firearm is loaded and/or ammunition is available).

The trial court granted Appellant's motion seeking a judgment of acquittal as to the Persons not to Possess a Firearm conviction[7] and for reconsideration of sentence but denied the motion for arrest of judgment.

On May 30, 2023, the trial court held a resentencing hearing at which Appellant asserted that, with respect to Appellant's Firearm not to be Carried without a License conviction, pursuant to *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Alleyne v. United States*, 570 U.S. 99 (2013), the court should resentence Appellant using an OGS of seven and not nine. Appellant argued that, even though the Commonwealth presented evidence that the weapon found in the vehicle was loaded, because the court did not provide the jury with an interrogatory regarding whether the weapon found in the vehicle was loaded or ammunition was available, the jury did not make a specific finding of fact on this question and, thus, the appropriate OGS for the offense is seven.[8] The Commonwealth argued that the correct OGS for the offense was nine because: (1) Appellant did not object to the jury questionnaire not containing an interrogatory as to whether the firearm was loaded; and (2) because the jury heard evidence that the gun was loaded, it

---

[7] The trial court vacated Appellant's Persons not to Possess a Firearm conviction after concluding that Appellant's Georgia drug conviction was not a disabling offense for the purposes of Section 6105.

[8] *See* 204 Pa. Code § 303.15 (listing OGS of seven for conviction of 18 Pa.C.S. § 6106(a)(1) where the firearm unloaded and/or ammunition was not available).

determined beyond a reasonable doubt that the firearm was loaded and there was ammunition available.

The trial court, "accepting [Appellant's] arguments for the sake of judicial economy rather than litigating another issue with respect to the firearm charge grading because there was no interrogatory submitted[,]" resentenced Appellant to an aggregate term of three to six years of incarceration. With respect to the Firearm not to be Carried without a License offense, the trial court imposed a sentence of twelve to twenty-four months of incarceration, based, in part, on an OGS of seven.

The next day, the Commonwealth filed a request for reconsideration of sentence. The Commonwealth argued that the holdings in *Apprendi* and *Alleyne*, which do not pertain to OGS calculations, were inapplicable to the instant case and, thus, the trial court erred in relying on them when resentencing Appellant. On July 17, 2023, the trial court denied the Commonwealth's request for reconsideration.

This timely cross-appeal followed. The parties and the trial court have complied with Pa.R.A.P. 1925.

**I.**

Appellant presents the following issue for our review:

Did the suppression court err when it determined that the search of [Appellant's] vehicle was a valid inventory search, and not an investigatory search, when it credited the officer's implausible testimony that when he instructed another officer to look out for a firearm it was part of training, there was not tow policy regarding the search of containers, and the officer completed an incomplete inventory of the vehicle[?]

- 9 -

Appellant's Brief at 5.

**A.**

Appellant challenges the trial court's denial of his motion to suppress. "Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." ***Commonwealth v. Evans***, 153 A.3d 323, 327 (Pa. Super. 2016) (citation omitted). "Once a motion to suppress evidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." ***Commonwealth v. Wallace***, 42 A.3d 1040, 1047–48 (Pa. 2012). Our scope of review of the suppression court's factual findings is limited to the record from the suppression hearing. ***Commonwealth v. Barr***, 266 A.3d 25, 39 (Pa. 2021). "Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error." ***Commonwealth v. Cephus***, 208 A.3d 1096, 1098 (Pa. Super. 2019) (citation omitted). We defer to the suppression court, "as factfinder[,] to pass on the credibility of witnesses and the weight to be given to their testimony." ***Commonwealth v. Elmobdy***, 823 A.2d 180, 183 (Pa. Super. 2003). Additionally, an appellate court can affirm a valid judgment for any reason supported by the record. ***Commonwealth v. Conforti***, 303 A.3d 715, 729 (Pa. 2023).

Inventory searches are "a well-defined exception to the warrant requirement of the Fourth Amendment." ***Commonwealth v. Nace***, 571 A.2d 1389, 1391 (Pa. 1990). Upon lawfully impounding a vehicle, the police may conduct an inventory search of the vehicle pursuant to "reasonable, standard" protocols. ***Commonwealth v. Hennigan***, 753 A.2d 245, 255 (Pa. Super. 2000). Because the search is intended to safeguard seized items, and not for investigatory purposes, the search does not need to be authorized by a warrant or supported by probable cause. ***Id.*** at 254-55.

An inventory search is proper when "(1) the police have legally impounded the vehicle;[9] and (2) the police have acted in accordance with a reasonable, standard policy of routinely securing and inventorying the contents of the impounded vehicle." ***Commonwealth v. Lagenella***, 83 A.3d 94, 102 (Pa. 2013).

Police departments must have procedures in place to ensure that an inventory search does not serve as a pretext for a general search to discover incriminating evidence. ***Florida v. Wells***, 495 U.S. 1, 4 (1990). When a defendant challenges the validity of an inventory search, the Commonwealth must demonstrate the existence of standardized criteria or routines explaining the scope of police department inventory searches and that the search in question comported with the department's standardized policy. ***Commonwealth v. West***, 937 A.2d 516, 529 (Pa. Super. 2007).

---

[9] Instantly, Appellant does not dispute that the police legally impounded his vehicle. Appellant's Brief at 19.

Relevant to the instant appeal, Section II-A-4 of the Tow Policy authorizes a vehicle tow when a vehicle is left unattended and parked illegally, constituting a hazard or obstruction to the flow of traffic. Section II-A-13 prohibits returning a vehicle to an unlicensed driver and permits the police to return a vehicle only to its owner and not a renter or lessee. In addition, Section III-D-2 permits the police to tow a vehicle only when it constitutes a hazard or obstruction of the flow of traffic and then only with the authorization of a supervisor.

**B.**

Appellant asserts that the trial court should have granted his motion to suppress because the search led by Corporal Braughler was investigative and not for purposes of securing and inventorying the contents of his vehicle. Appellant's Brief at 19-29. In support of this claim, Appellant contends that the Tow Policy and Patrol Manual both lack policies or guidance related to how officers should conduct inventory searches, but rather merely provide "barebones recitation of the law[.]" *Id.* at 20-21. Citing *West*, *supra*, and *Wells*, *supra*, Appellant argues that the instant search was invalid and "constitutionally deficient" because the Tow Policy and Patrol Manual lack instructions "dictating how to search containers," specifically non-locked but closed containers, and provide no "standardized criteria or routines explaining the scope of the inventory search." Appellant's Brief at 22-24. Appellant argues that the trial court erred in reasoning that a policy that prohibits the search of a locked container impliedly permits the search of an unlocked

- 12 -

container because that reasoning "fails to account for the requirement that the policy be sufficiently defined to either curtail or allow for discretion." *Id.* Appellant also argues that the trial court erred in crediting Officer Braughler's testimony that the reason he urged Officer to be vigilant in searching for a firearm was to avoid potentially returning the vehicle to the rental agency with a gun in it. *Id.* at 27-28.

With respect to Appellant's claim that the Harrisburg Police lacked a specific policy regarding container searches, the trial court explained that the Commonwealth presented evidence belying this claim. In particular, the trial court noted Corporal Braughler's testimony that officers "specifically do not search locked containers due to their increased expectation for privacy." Trial Ct. Op. at 10 (citing N.T. Suppression at 12, 23-24). In addition, the trial court explained that because the Tow Policy expressly prohibits the police from searching locked containers, it implicitly authorizes the search of unlocked containers. *Id.* The court distinguished this case from *Wells*, *supra*, where the U.S. Supreme Court affirmed the Florida Supreme Court's decision to suppress evidence based upon its finding that the police in that case had "no policy whatever with respect to the opening of closed containers encountered during an inventory search." Trial Ct. Op. at 10-11 (citing *Wells*, 495 U.S. at 4-5). The trial court found that, unlike in *Wells*, the Harrisburg Police: (1) had a policy regarding container searches; (2) its inventory searches were not a "ruse for general rummaging in order to discover incriminating evidence"; and (3) its official inventory policy did not allow "so much latitude that

inventory searches are turned into 'a purposeful and general means of discovering evidence of a crime.'" Trial Ct. Op. at 11 (citing **Wells**, 495 U.S. at 4).

The trial court also rejected Appellant's claim that it gave improper weight to Corporal Braughler's testimony. The court opined as follows:

> We discern no investigative motive from Corporal Braughler's testimony, and we find nothing 'implausible' about it. He was simply advising a new officer to be careful when conducting the search, and emphasizing the importance of locating firearms which should not be made accessible to tow operators or to those to whom the vehicle may be returned. In fact, we find Corporal Braughler's comments to be prudent and to demonstrate a motive that is entirely not investigative. An officer with an investigative motive would be hyper attentive to any contraband they may discover for which a suspect could be prosecuted, or which may lead to further investigation. Corporal Braughler's admonition to refrain from reaching under seats in the interest of safety is not indicative of an officer intent on investigation. The discovery of a needle may in and of itself may be contraband. At the very least, it would support a further investigation of drug activity. Contrary to [Appellant's] assertion, the testimony in question supports the finding that Corporal Braughler was more concerned with the principles underlying the inventory search, the safeguarding of items taken into police custody, protecting the police against property claims or disputes, and protecting the public from danger.

Trial Ct. Op. at 9-10 (citations omitted).

Following our review of the record, we discern no abuse of discretion or error of law in the suppression court's denial of Appellant's motion to suppress. The evidence of record supports the court's conclusion that the Harrisburg Police Department had a container search policy that prohibited officers from searching locked containers. The trial court reasonably concluded that

because this policy precludes the search of locked containers, it implicitly authorizes the search of unlocked containers. Trial Ct. Op. at 5. This conclusion, coupled with Corporal Braughler's testimony, found credible by the trial court, regarding the Department's practice of not searching locked containers, supports the suppression court's determination that the officers conducted a legally valid inventory search. Furthermore, we defer to the suppression court's determination that Corporal Braughler's testimony was credible, and we will not substitute our judgment for that of the trial court.

Accordingly, we conclude that the trial court properly exercised its discretion in determining that the police "acted in accordance with a reasonable, standard policy for inventorying the property of impounded vehicles, and that the inventory search was conducted in good faith and not for a solely investigative purpose." Trial Ct. Op., at 12. Appellant's claim, thus, merits no relief.

## II.

The Commonwealth raises the following issue on appeal:

> Whether the trial court abused its discretion in imposing sentence where it improperly sentenced [A]ppellant under an [OGS] of seven instead of nine for [C]arrying a [F]irearm without a [L]icense?

Commonwealth's Brief at 5.

The Commonwealth asserts that the trial court abused its discretion and erred as a matter of law in concluding that *Apprendi* and *Alleyne* apply to the calculation of OGS. In particular, it argues that the court erred in finding

- 15 -

that, because the jury did not receive a separate interrogatory regarding whether the gun found among Appellant's possessions was loaded or ammunition was present, the correct OGS for the offense of Carrying a Firearm without a License was seven. Commonwealth's Brief at 32.

A claim that the sentencing court used an incorrect OGS is a challenge to the discretionary aspects of a sentence. *Commonwealth v. Williams*, 151 A.3d 621, 625 (Pa. Super. 2016). "Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." *Commonwealth v. Lucky*, 229 A.3d 657, 663 (Pa. Super. 2020) (citation omitted). "An abuse of discretion is not merely an error of judgment[;] rather[, it is] the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Commonwealth v. Mickel*, 142 A.3d 870, 874 (Pa. Super. 2016) (citation omitted).

In order to obtain this Court's review, an appellant challenging the discretionary aspects of his sentence must comply with the following requirements: (1) file a timely notice of appeal; (2) preserve the issue at sentencing or in a motion to reconsider and modify sentence; (3) include within his brief a concise statement of the reasons relied upon for allowance of appeal as required by Pa.R.A.P. 2119(f); and (4) raise a substantial question that the sentence is inappropriate under the Sentencing Code. *Commonwealth v. Carrillo-Diaz*, 64 A.3d 722, 725 (Pa. Super. 2013).

Here, the Commonwealth timely appealed, preserved its challenge in a post-sentence motion to modify sentence, and has included a Pa.R.A.P. 2119(f) statement in its brief. Because an allegation that the sentencing court applied an incorrect OGS raises a substantial question, we proceed to address the Commonwealth's claim. ***Commonwealth v Archer***, 722 A.2d 203, 210-11 (Pa. Super. 1998).

The Commonwealth correctly notes that ***Apprendi*** and ***Alleyne***, respectively, require that a jury find beyond a reasonable doubt any element that increases the statutory maximum penalty for an offense or any fact that results in a mandatory minimum sentence,[10] but neither case imposes the requirement that a jury make a specific finding of any fact that increases or decreases the OGS of an offense. ***Id.*** at 32-33. The Commonwealth also notes that the offense of Carrying a Firearm without a License is a third-degree felony with a maximum possible sentence of seven years of imprisonment **regardless of whether the firearm is loaded or unloaded**. ***Id.*** at 32. Accordingly, it concludes that ***Apprendi*** and ***Alleyne*** have no bearing on the calculation of OGS and the trial court's decision to resentence Appellant using an OGS of seven was in error.

Following our review, we agree with the Commonwealth that the trial court abused its discretion by misapplying the holdings in ***Apprendi*** and ***Alleyne*** when determining that Appellant's Carrying a Firearm without a

---

[10] ***See Apprendi***, 530 U.S. at 490-91; ***Alleyne***, 570 U.S. at 116.

License conviction has an OGS of seven, and not nine. Pursuant to Pennsylvania's Sentencing Guidelines, 204 Pa. Code § 303.15, the OGS for a conviction of Section 6106(a)(1) where, as here, the firearm was loaded and/or ammunition was available, is nine. *Id.* at § 303.15. In addition, the Sentencing Guidelines require that the **sentencing court**, and not the jury, determine any factors that would enhance a defendant's guideline sentence by a preponderance of the evidence. *Id.* at § 303.9(a)(3)(ii). Furthermore, and most critically, neither *Apprendi* nor *Alleyne* imposes the requirement that a jury make a specific finding of any fact that increases or decreases the OGS of an offense. We, thus, agree with the Commonwealth that the holdings in *Apprendi* and *Alleyne* do not apply to the calculation of the OGS of an offense and that the trial court abused its discretion in resentencing Appellant on this basis.

**III.**

In sum, we affirm the trial court's order denying Appellant's motion to suppress and vacate Appellant's judgment of sentence and remand for resentencing consistent with this memorandum.

Order denying Appellant's motion to suppress affirmed. Order denying Commonwealth's post-sentence motion reversed. Judgment of sentence vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>08/09/2024</u>