J-S02008-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NYEESHA CARTHON | : | |
| | : | |
| Appellant | : | No. 3208 EDA 2022 |

Appeal from the Judgment of Sentence Entered September 28, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004267-2021

BEFORE: LAZARUS, P.J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, P.J.:                      **FILED AUGUST 5, 2025**

Nyeesha Carthon appeals from the judgment of sentence, entered in the Court of Common Pleas of Philadelphia County, after the trial court convicted her, in a nonjury trial, of one count each of carrying a firearm without a license, **see** 18 Pa.C.S.A. § 6106(a)(1),[1] and carrying a firearm on the public

_____

[*] Former Justice specially assigned to the Superior Court.

[1] Section 6106(a)(1) provides that

> any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

18 Pa.C.S.A. § 6106.

streets of Philadelphia. *See id.* at § 6108.[2] After our review, we vacate Carthon's judgment of sentence and remand for further proceedings.

The trial court set forth the facts of this case as follows:

On November 20, 2022[,] at approximately 9:10 pm, Philadelphia Police Officer Michael Braun stopped a U-Haul truck for disregarding two red lights on North Mascher Street. Officer Braun removed the driver from the truck. Carthon was in the front passenger seat and had a small black purse to her left on the seat. When Officer Braun approached Carthon's side of the U-Haul, Carthon turned her back to him and flipped the sun visor to block his view. Carthon then gave Officer Braun a fake name, hesitated on the spelling [of her name] and her date of birth, and did not provide an address. Officer Braun described her as emotional, uncooperative, and deceptive.

The U-Haul truck was stopped in a travel lane. The driver had a suspended license. Carthon did not have a driver's license. There was no one else in the truck. The police planned to "live-stop" the truck—they intended to radio for the Philadelphia Parking Authority to move the vehicle.

While Officer Braun conducted license checks on Carthon and the driver, Officer Braun's partner saw Carthon move to the driver's seat and back while locking the door. When Officer Braun returned to the U-Haul, the purse had moved—Carthon was [now] sitting on it. Officer Braun decided to do a protective frisk. He took the purse from the front seat, unzipped it, and discovered a firearm inside.

Carthon was arrested for possession of a firearm. She was 18 years old and not licensed to carry.

Trial Court Opinion, 4/3/23, at 1-2 (citations to record omitted).

_____

[2] Section 6108 provides, in relevant part, that "[n]o person shall carry a firearm, rifle[,] or shotgun at any time upon the public streets or upon any public property in a city of the first class unless . . . such person is licensed to carry a firearm[.]" *Id.* at § 6108(1). Philadelphia is a city of the first class. *See id.*

In addition to the above-named offenses, Carthon was also charged with carrying a firearm with an altered serial number[3] and giving false identification to a police officer.[4] On July 26, 2021, Carthon filed a motion to suppress the firearm, which the Honorable Deborah Cianfrani denied on March 24, 2022. On August 11, 2022, Carthon proceeded to a nonjury trial before the Honorable Christopher R. Hall after Judge Cianfrani recused herself. Judge Hall found Carthon guilty of the offenses under sections 6106 and 6108 and acquitted her of the remaining charges.

On September 28, 2022, the court sentenced Carthon to one year of probation. Carthon filed a timely post-sentence motion, which the court denied on November 18, 2022. Carthon filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Carthon raises the following claims for our review:

> 1. Is not [section] 6108 unconstitutional as applied, because, with the licensing scheme of 18 Pa.C.S.[A.] § 6109, and its prohibition for those under 21 to obtain a license, section 6108 is a complete ban on public carry for 18-20 year olds in Philadelphia, in violation of the Second Amendment right to publicly carry arms, the Pennsylvania constitutional rights to bear arms and to self[-]defense, equal protection, and the Pennsylvania constitutional prohibition against special legislation?
>
> 2. Did not the search of [Carthon's] purse and recovery of a gun violate federal and Pennsylvania constitutional rights, and did not the Commonwealth fail to establish that the gun could and would have been inevitably discovered during a lawful inventory search?

---

[3] 18 Pa.C.S.A. § 6110.2(a).

[4] *Id.* at § 4914.

Brief of Appellant, at 2.

Carthon first alleges that Pennsylvania's violation of the Uniform Firearms Act ("VUFA") scheme is unconstitutional for several reasons. First, she asserts that, because section 6108 requires an individual to obtain a license to publicly carry a firearm in Philadelphia, and section 6109[5] prohibits an 18- to 20-year-old such as herself from obtaining a license at all, the result is that all 18- to-20-year-olds are completely barred from public carry in Philadelphia in violation of the Second Amendment. Carthon argues, in light of the United States Supreme Court's decision in *New York Rifle & Pistol Ass'n. v. Bruen*, 597 U.S. 1 (2022), that we should "hold that the statutory scheme is unconstitutional because the Commonwealth cannot overcome the overwhelming historical evidence that 18-[to]-20-year-olds had a right to possess and carry arms at the time the Second Amendment was adopted in 1791." Brief of Appellant, at 16. Carthon further argues that section 6108 is unconstitutional under Article I, Section 21 of the Pennsylvania Constitution, the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution, and several provisions of the Pennsylvania Constitution.

We need not address Carthon's claims in depth, as this Court's recent decision in *Commonwealth v. Williams*, _ A.3d _, 182 MDA 2024 (Pa.

_____

[5] Section 6109 provides, in relevant part, that "[a]n individual who is **21 years of age or older** may apply to a sheriff for a license to carry a firearm concealed on or about [her] person or in a vehicle within this Commonwealth." 18 Pa.C.S.A. § 6109(b) (emphasis added).

Super. 2025), is dispositive. In **Williams**, this Court addressed a constitutional challenge to section 6109 and, applying the test set forth in **Bruen**, **supra**, and clarified in **United States v. Rahimi**, 602 U.S. 680 (2024), concluded that the statute's prohibition on the concealed carrying of firearms by 18-to-21-year-olds is "consistent with the nation's historical tradition of firearm regulation" and, thus, constitutional under both the United States and Pennsylvania Constitutions. **Williams**, ---A.3d---, 182 MDA 2024, at *16.

In light of **Williams**, Carthon's equal protection argument as to section 6108[6] must fail. "The essence of the constitutional principle of equal protection under the law is that like persons in like circumstances will be treated similarly." **Commonwealth v. Bullock**, 868 A.2d 516, 524 (Pa. Super. 2005). As the law currently stands, Carthon enjoys the same firearm rights as every other Pennsylvanian aged 18 to 21: she may openly carry a weapon anywhere in the Commonwealth—including in the City of Philadelphia—but may not obtain a license to carry a concealed weapon until

---

[6] We acknowledge this Court's recent decision in **Commonwealth v. Sumpter**, --- A.3d ---, 2271 EDA 2023 (Pa. Super. 2025). There, this Court held section 6108 unconstitutional as applied to the 19-year-old defendant, who was openly carrying a firearm on the streets of Philadelphia. As the Court noted in that case, "for purposes of Appellant's equal protection argument, . . . we analyze the constitutionality of [section] 6108 insofar as it prohibits the unlicensed open carry of firearms on public streets and public property in the [C]ity of Philadelphia. . . . We do not address the overlap between [section] 6108 and [section] 6109, insofar as both statutes criminalize unlicensed **concealed** carry within" Philadelphia. **Id.** at 3 (emphasis in original). Here, unlike the defendant in **Sumpter**, Carthon's weapon was concealed in her purse.

she reaches the age of 21. *See Sumpter*, *supra*; *Williams*, *supra*. Accordingly, she is entitled to no relief on this claim.

In her second and final claim, Carthon argues that the search of her purse violated her rights under the Pennsylvania and United States Constitutions and the Commonwealth failed to establish that the gun would have been inevitably discovered during a lawful inventory search. Carthon asserts that the attendant facts—giving a false name, moving suspiciously in the car, trying to hide something from the officer and complying when asked to exit the van—did not provide "reasonable suspicion that [she] was armed, or as required, armed and dangerous." Brief of Appellant, at 38-39. Moreover, Carthon argues that, even if reasonable suspicion existed, "a protective frisk of a car is permitted only for officer safety." *Id.* at 39. Here, both the driver and Carthon had been removed from the vehicle and were in handcuffs by the time the search occurred and, thus, Carthon argues, the "officer-safety" rationale was inapplicable. *Id.* at n.16.

Carthon also claims that "the officer's suspicions clearly did not amount to probable cause to search the zipped purse, the requisite standard for this intrusion" and that "a warrant is required to search a car, and to search a container in a car[,] unless the Commonwealth can establish that there were exigent circumstances," which were not present in this case. *Id.* at 39-40.

Finally, Carthon argues that the suppression court erred in concluding that the inevitable discovery rule applied, as the Commonwealth "failed at the suppression hearing to prove either of the two prongs necessary" for the

doctrine to apply. *Id.* at 41. Specifically, the Commonwealth did not establish that the gun in the purse would have been discovered and that the firearm would have been discovered lawfully during an inventory search of the vehicle. *Id.* at 41-42. Carthon argues that the Commonwealth did not present testimony or admissible records that an inventory search would, in fact, have been performed on the vehicle. *Id.* at 42. Rather, the Commonwealth only presented Officer Braun's testimony that "he or his partner completed a live[-]stop report," which was "completely blank where it lists items recovered and an inventory search." *Id.* at 42-43. Finally, Carthon asserts the Commonwealth failed to prove that it could have lawfully searched the purse during an inventory search. Carthon argues that "the United States Supreme Court has held that the Fourth Amendment requires a specific standard policy providing for whether or not an officer can search closed containers during an inventory search." *Id.* at 43, citing, *e.g.*, *Florida v. Wells*, 495 U.S. 1 (1990). Here, the Commonwealth offered no evidence of such a policy and the suppression judge "sua sponte claimed that there was a protocol that provided that police could search everything, including the purse[,] at the impound lot[.]" Brief of Appellant, at 44.

In response, the Commonwealth argues that the firearm was recovered pursuant to a "constitutionally proper safety frisk" under *Terry v. Ohio*, 392 U.S. 1 (1968), and was justified by the circumstances faced by the officers. Brief of Appellee, at 46-47.

> Police pulled over [Carthon's] U-Haul for a Motor Vehicle Code violation, the propriety of which [Carthon] does not challenge. When Officer Braun approached the vehicle and spoke with [Carthon], she was emotional, agitated, and uncooperative. She pulled the sun visor down to block Officer Braun's view. She gave police a false name. She provided no identification. While Officer Braun was trying to verify [Carthon's] identity, she moved from the passenger seat to the driver's seat and back, sat on her purse, and locked the doors to the U-Haul. When she was taken out of the van, she tried to kick police officers. This Court has found reasonable suspicion to conduct a safety frisk based on far less.

*Id.* at 47-48 (citing cases).

Moreover, the Commonwealth asserts that the fact police found the firearm in a closed purse is of no moment and that, "where police reasonably believe a suspect is armed and dangerous, a protective search of a purse is permitted so long as police 'do not go on a fishing expedition.'" *Id.* at 48, quoting *Commonwealth v. Davidson*, 566 A.2d 897, 901 (Pa. Super. 1989). The Commonwealth argues that the proper standard here is reasonable suspicion, not probable cause, and that Carthon's reliance on *Commonwealth v. Hicks*, 208 A.3d 916 (Pa. 2019), and *Commonwealth v. Alexander*, 243 A.3d 177 (Pa. 2020), is misplaced.

Finally, the Commonwealth posits that, even if a limited safety frisk was not justified, the firearm was still admissible under the inevitable discovery rule, which applies where "(1) the police have lawfully impounded the vehicle; and (2) the police have acted in accordance with a reasonable, standard policy of routinely securing and inventorying the contents of the impounded vehicle." Brief of Appellee, at 51, citing *Commonwealth v. Lagenella*, 83 A.3d 94,

102 (Pa. 2013). Here, the Commonwealth argues, both of these elements were satisfied.

As to the first prong, the Commonwealth notes that Carthon does not dispute that the vehicle was legally impounded. Addressing Carthon's argument as to the second prong—that the Commonwealth presented no evidence that police regularly and routinely conduct an inventory search in every case—the Commonwealth first asserts that the argument is waived for failure to raise the issue before the suppression court. *Id.* Even if not waived, the Commonwealth argues that this Court "has repeatedly held that evidence inevitably would have been discovered under nearly identical circumstances." *Id.* at 52, citing *Commonwealth v. Smith*, 808 A.2d 215 (Pa. Super. 2002); *see also* Brief of Appellee, at 52, citing *Commonwealth v. Bailey*, 986 A.2d 860 (Pa. Super. 2009), and *Commonwealth v. Parker*, 2021 WL 276173 (Pa. Super. filed Jan. 27, 2021) (unpublished memorandum decision).[7]

Finally, the Commonwealth asserts that, if this Court should conclude that the Commonwealth failed to meet its burden at the suppression hearing, the proper remedy would not be to order the weapon suppressed. Rather, the Commonwealth argues:

> In the middle of cross-examination of the Commonwealth's suppression-motion witness, the trial court interrupted and, after considerable dialogue with defense counsel, sua sponte ordered that suppression was denied based on inevitable discovery. Indeed, the court denied [Carthon's] motion *while the*

_____

[7] Pursuant to Pa.R.A.P. 126(b), unpublished nonprecedential decisions of this Court filed after May 1, 2019 may be cited for their persuasive value.

*Commonwealth's witness was still on the stand*, and before the Commonwealth could conduct any redirect examination or call additional witnesses. Strictly speaking, the Commonwealth never rested for purposes of the motion. Thus, even if [Carthon's] arguments had conceivable merit, the appropriate remedy would not be to order the firearm suppressed—it would instead be to vacate and remand to the lower court to allow the Commonwealth to complete its presentation of evidence. **Commonwealth v. Johnson**, 281 A.3d 1055 [(Pa. Super. 2022) (Table)] ("[B]ecause we conclude that . . . there remain several factual determinations [regarding suppression] that must be made in he first instance by the trial court, we vacate the judgment of sentence and remand for reconsideration of Appellant's suppression motion.").

Brief of Appellee, at 54 (emphasis in original).

The Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution guarantee individuals freedom from unreasonable searches and seizures. **See Commonwealth v. Singletary**, 267 A.3d 1267, 1274 (Pa. Super. 2021). "A warrantless search or seizure of evidence is . . . 'presumptively unreasonable under the Fourth Amendment and Article I, [Section] 8, subject to a few specifically established, well-delineated exceptions.'" **Commonwealth v. Luczki**, 212 A.3d 530, 546 (Pa. Super. 2019) (citation omitted).

The law recognizes three distinct levels of interactions between police officers and citizens: (1) a mere encounter; (2) an investigative detention, often described as a **Terry** stop; and (3) a custodial detention.

A mere encounter can be any formal or informal interaction between an officer and a citizen, but will normally be an inquiry by the officer of a citizen. The hallmark of this interaction is that it carries no official compulsion to stop or respond and therefore need not be justified by any level of police suspicion.

In contrast, an investigative detention carries an official compulsion to stop and respond. Since this interaction has

- 10 -

elements of official compulsion[,] it requires reasonable suspicion of unlawful activity.

Finally, a custodial detention occurs when the nature, duration[,] and conditions of an investigative detention become so coercive as to be, practically speaking, the functional equivalent of an arrest. This level of interaction requires that the police have probable cause to believe that the person so detained has committed or is committing a crime.

*Commonwealth v. Jefferson*, 256 A.3d 1242, 1247-48 (Pa. Super. 2021) (en banc) (citations, quotation marks, and ellipses omitted).

"In reviewing whether reasonable suspicion . . . exists, we must . . . examine the totality of the circumstances to determine whether there exists a particularized and objective basis for suspecting an individual [] of criminal activity." *Commonwealth v. Epps*, 608 A.2d 1095, 1096 (Pa. Super. 1992). Even innocent factors, viewed together, may arouse suspicion that criminal activity is afoot. *Commonwealth v. Cook*, 735 A.2d 673, 676 (Pa. 1999); *see also Commonwealth v. Riley*, 715 A.2d 1131, 1135 (Pa. Super. 1998) ("[A] combination of circumstances, none of which taken alone would justify a stop, may be sufficient to achieve a reasonable suspicion."). Moreover, "in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Terry*, 392 U.S. at 27.

A motor vehicle stop is generally an investigative detention. *Commonwealth v. Spence*, 290 A.3d 301, 314 (Pa. Super. 2023). "During a traffic stop, it is inherently reasonable for an officer to order the driver of

the vehicle to alight from the car." ***Id.***, citing ***Commonwealth v. Brown***, 654 A.2d 1096 (Pa. Super. 1995).

> It is well[-]settled that an officer may pat[ ]down an individual whose suspicious behavior he is investigating on the basis of a reasonable belief that the individual is presently armed and dangerous to the officer or others. To validate a ***Terry*** frisk, the police officer must be able to articulate specific facts from which he reasonably inferred that the individual was armed and dangerous. In determining whether a ***Terry*** frisk was supported by a sufficient articulable basis, we examine the totality of the circumstances.

***Commonwealth v. Gray***, 896 A.2d 601, 605-06 (Pa. Super. 2006) (citations and footnote omitted). Under that standard, police may conduct a limited pat-down of a person's outer clothing "in an attempt to discover the presence of weapons which may be used to endanger the safety of police or others." ***Commonwealth v. Wilson***, 927 A.2d 279, 285 (Pa. Super. 2007) (citation and quotation marks omitted).

In ***Michigan v. Long***, 463 U.S. 1032 (1983), the United States Supreme Court applied the principles set forth in ***Terry*** to a search of a passenger compartment of a vehicle for weapons. The ***Long*** Court held that "the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on specific, and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." ***Id.*** at 1049 (citation and internal quotation marks omitted). "[T]he issue is whether a reasonably prudent man

in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* at 1050 (citation omitted).

"In evaluating the validity of an officer's investigative or protective conduct under *Terry*, the touchstone of our analysis is always the reasonableness in all circumstances of the particular governmental intrusion of a citizen's personal security." *Id.* at 1051 (citation, internal quotation marks, and ellipses omitted). "Therefore, the balancing required by *Terry* clearly weighs in favor of allowing the police to conduct an area search of the passenger compartment to uncover weapons, as long as they possess an articulable and objectively reasonable belief that the suspect is potentially dangerous." *Id.* at 1051. The *Long* court also emphasized that a *Terry* investigation is "at close range, when the officer remains particularly vulnerable in part because a full custodial arrest has not been effected, and the officer must make a quick decision as to how to protect himself and others from possible danger." *Id.* at 1052 (citation and internal quotation marks omitted).

Evidence obtained by police through an unlawful search may not be used in any respect, including as evidence at trial against the subject of the search, except in certain limited circumstances. *See Commonwealth v. Fulton*, 179 A.3d 475, 489 (Pa. 2018). Such evidence may only be used under certain exceptions, such as when the when the evidence would have "inevitably been discovered without reference to the police error or misconduct." *Id.* at 489 (citation omitted). The prosecution carries the burden of establishing, by a

preponderance of the evidence, that illegally obtained evidence would have ultimately or inevitably been discovered by legal means. *Id.* at 490.

One such exception, and the one at issue here, is an inventory search. *Lagenella*, 83 A.3d at 102, citing *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976). The purpose of an inventory search is not to uncover criminal evidence, but to safeguard items taken into police custody in order to benefit both the police and the defendant. *Commonwealth v. Nace*, 571 A.2d 1389, 1391 (Pa. 1990). An inventory search of an automobile is permissible when: (1) the police have lawfully impounded the vehicle; and (2) the police have acted in accordance with a reasonable, standard policy of routinely securing and inventorying the contents of the impounded vehicle. *Opperman*, 428 U.S. at 375. In *Commonwealth v. Henley*, 909 A.2d 352 (Pa. Super. 2006) (en banc), this Court explained:

> In determining whether a proper inventory search has occurred, the first inquiry is whether the police have lawfully impounded the automobile, i.e., have lawful custody of the automobile. The authority of the police to impound vehicles derives from the police's reasonable community care-taking functions. Such functions include removing disabled or damaged vehicles from the highway, impounding automobiles [that] violate parking ordinances (thereby jeopardizing public safety and efficient traffic flow), and protecting the community's safety.
>
> The second inquiry is whether the police have conducted a reasonable inventory search. An inventory search is reasonable if it is conducted pursuant to reasonable standard police procedures and in good faith and not for the sole purpose of investigation.

*Id.* at 359 (citations omitted). A protective vehicle search conducted in accordance with standard police department procedures assures that "the

intrusion [is] limited in scope to the extent necessary to carry out the caretaking function." **Opperman**, 428 U.S. at 375.

Here, we agree with Carthon that the record is silent as to the second prong of the inventory search exception, i.e., whether the search was conducted pursuant to "reasonable standard police procedures and in good faith and not for the sole purpose of investigation." **Henley**, 909 A.2d at 359. At the suppression hearing, the Commonwealth presented no evidence as to the Philadelphia Police Department's policy regarding inventory searches. **See Commonwealth v. West**, 937 A.2d 516, 529 (Pa. Super. 2007) ("[T]he suppression transcript simply does not contain testimony showing the department had in place and employed a standard, reasonable policy when searching the vehicle. The Commonwealth had the burden to demonstrate the particulars of that policy and to show the search was done in accordance therewith. Having not done so, the search cannot be upheld as a valid inventory search."). However, due to the unique circumstances of this case, our inquiry does not end here.

At the suppression hearing, the court interrupted defense counsel's cross-examination of Officer Braun and, sua sponte, opined that the doctrine of inevitable discovery applied, regardless of whether reasonable suspicion existed:

> THE COURT: I'm going to ask you, where are you going with this? I mean, I'[ve] given you so much latitude, but you know, you're off the mark completely here. It's a live stop, you understand, a live stop.

They've established the following:

One, it was impounded because it's in a travel lane. We have two people in the vehicle who have no license to drive. They can't move it into a safe place to put it in, in mobilization, right? You can't do that, because, one, she's lied about who she is. She doesn't have a driver's license. There's no proof that she can get behind the wheel of a car. And the other gentlemen had an invalid driver's license. So[,] we've got an impoundment issue. It's live stopped. Now, whether the officer did anything improper before that doesn't [matter because the] inevitable discovery doctrine[] purge[s] everything.

Let's say he had no right to look into that purse. She wasn't doing anything that was giving him reasonable suspicion to believe that she's armed and dangerous.

All right. I will say—[let's] make that argument. But he would have the right, after it's impounded[,] to search everything in that vehicle, including the purse where the gun would be found. It purges anything he might have done improperly.

. . .

Now, maybe he did something wrong[.] Sorry, officer. I'm not sure if you really had the right to look in the purse, because what you said to me, I don't really believe gives you reasonable articulable facts that she was involved. But it doesn't matter[—]it gets purged, because under live stop he can do that at the impound lot. Every place in that vehicle gets to be searched. It gets purged then. It comes in. The gun would have been found. That's what the case law says. Your motion—you're not going anywhere, so why are you asking these questions?

N.T. Suppression Hearing, 3/24/22, at 33-34, 36-37.

Having interrupted defense counsel's cross-examination and ruled on Carthon's suppression motion on a basis not raised by either party, the suppression court effectively precluded the Commonwealth from presenting the evidence necessary to establish that police would have performed an inventory search, and that the search would have been conducted pursuant

- 16 -

to reasonable standard police procedures in good faith and not for the sole purpose of investigation. **Henley**, **supra**. Accordingly, for reasons beyond the control of the Commonwealth, we are unable to determine whether the suppression court properly applied the inevitable discovery doctrine in this case.[8]

Moreover, although the suppression court appeared to suggest that Officer Braun may not have possessed reasonable suspicion to search Carthon's handbag, it did not ultimately rule on the issue in light of its sua sponte decision on the basis of the inevitable discovery doctrine. Without the suppression court's factual findings and conclusions of law as to whether the police possessed reasonable suspicion to search Carthon's bag, we are unable to engage in meaningful appellate review of the issue. Indeed, given that the suppression court interrupted Commonwealth's witness before defense counsel could complete her cross-examination and the Commonwealth could engage in redirect questioning, the suppression record is incomplete. Accordingly, we are constrained to vacate Carthon's judgment of sentence and remand the matter to the trial court for further fact finding as to the claims raised in Carthon's suppression motion. **See Johnson**, 281 A.3d at *7 (where

_____

[8] The Commonwealth asserts Carthon's claim challenging the court's ruling on inevitable discovery is waived, as she did not raise the issue before the suppression court. Under the particular circumstances of this case, in which the suppression court sua sponte raised the issue, we decline to find waiver. Just as the Commonwealth was denied the opportunity to present evidence in support of inevitable discovery, the defense was also blindsided by the court's sua sponte invocation of the doctrine.

outstanding factual determinations by trial court remain, remand for reconsideration of suppression motion appropriate).

Judgment of sentence vacated. Case remanded to trial court for further proceedings consistent with the dictates of this memorandum. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/5/2025